623 A.2d 917

**RITE CARE RESOURCES, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL
BOARD (DAVIS), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 14, 1992.

Decided March 19, 1993.

Audrey L. Jacobsen for petitioner.

Andrew K. Fine for respondent.

Before SMITH and KELLEY, JJ., and SILVESTRI, Senior Judge.

SMITH, Judge.

Rite Care Resources (Employer) petitions for review of the order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's decision denying Employer's petitions for review and for termination of total disability payments made to Regina Davis (Claimant). The issue for this Court's consideration is whether Claimant was participating in a ridesharing arrangement as defined in Section 1 of the

Act of December 14, 1982, P.L. 1211, 55 P.S. § 695.1, common-ly known as the Ridesharing Act.

I

Claimant was a certified nursing assistant working for Employer, which provides its employees to convalescent and nursing homes in Pennsylvania and New Jersey. Claimant has worked at six or seven different convalescent and nursing homes for Employer. On December 6, 1989, Claimant suffered a concussion and cervical and lumbar strains when the Employer-owned van in which she was riding was involved in an accident while en route to one of Employer's job sites in Pennshauken, New Jersey. Employer promptly issued a notice of compensation payable providing for total disability benefits.

In July 1990, Employer petitioned for review of the compensation agreement and alleged that the compensation notice is materially incorrect as Claimant was participating in a ridesharing arrangement at the time of her injury, and that Section 3 of the Ridesharing Act, 55 P.S. § 695.3, provides that injuries incurred under such circumstances are not compensable under The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031.

After several hearings, the referee found the following facts. In order to be assigned to her daily employment at one of the convalescent and nursing homes, Claimant checked in at Employer's Chestnut Street location in Philadelphia. Prior to checking at the Chestnut Street location, Claimant was unaware of which convalescent facility she would be assigned to for that day. Claimant was also unaware of any other arrangement for transportation to the various job sites, other than by taking Employer's van. Claimant was paid by Employer for the hours she worked at the convalescent and nursing homes, but was not paid for the hours during which she rode in Employer's van. The referee specifically found that although Claimant's participation in the van program was

entirely voluntary, the system set up by Employer made it inevitable that Claimant would ride in the van.

The referee noted that the public policy goals of the Ridesharing Act are to encourage employers to invest in cars and vans to bring employees to work more economically and efficiently than would be the case when each travels separately. However, the referee determined that Employer did not utilize its van program to bring employees to Employer's place of business at the Chestnut Street location; instead, employees came to the Chestnut Street location entirely on their own. In his discussion, the referee stated:

> [E]mployer used its location ... to marshal its many employees and then to disperse them to various work locations at the convenience and in the interest of the employer. This decision is made on the narrow ground that while claimant was being transported in her employer's van she was not travelling between her home and her employer's place of business but was instead travelling between her employer's place of business and claimant's work location for that particular day.

Referee's Decision, p. 5. The referee concluded that the Ridesharing Act does not apply to a passenger under such circumstances and that, therefore, Employer had failed to demonstrate a material mistake with respect to the issuance of the notice of compensation payable. On appeal, the Board affirmed the referee and Employer appealed to this Court.[1]

## II

Section 3 of the Ridesharing Act provides in pertinent part that the Worker's Compensation Act "shall not apply to a passenger injured while participating in a ridesharing arrangement *between such passenger's place of residence and place of employment.*" (Emphasis added). Section 1 of the Ridesharing Act provides in pertinent part that "ridesharing

---

1. This Court's scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether there was a constitutional violation. *Yezovich v. Workmen's Compensation Appeal Board (USX Corp.)*, 144 Pa.Commonwealth Ct. 601, 601 A.2d 1341 (1992).

arrangement" shall mean any one of the following forms of transportation:

(1) The transportation of not more than 15 passengers where such transportation is incidental to another purpose of the driver who is not engaged in transportation as a business. *The term shall include ridesharing arrangements commonly known as carpools and vanpools, used in the transportation of employees to or from their place of employment.*

(2) The transportation of employees to or from their place of employment in a motor vehicle owned or operated by their employer.

(Emphasis added). Employer argues that Claimant is barred from receiving benefits since she was participating in a voluntary ridesharing arrangement at the time of her accident.

■ Employer first asserts that the referee's following findings of fact were not supported by substantial evidence: Claimant's participation in the van program was inevitable; Claimant was under Employer's dominion and control while in the van; Claimant was required to check in at the Chestnut Street facility; Claimant was unaware of which facility she would be assigned to; and the van program was for Employer's benefit. In an attempt to refute these findings, Employer makes numerous citations to testimony of its employee William J. Vohs and Omar K. Wilson, manager of employment services for Employer. Both witnesses testified that employees were not required to ride on the vans; that different stops were posted throughout the city of Philadelphia for the employees' convenience; that Claimant was free to commute to her work place in any fashion she chose; that an employee could call in and find out where he or she was scheduled to work rather than going to the Chestnut Street location; and that Claimant's signing-in was only for security purposes and not at all related to her employment with Employer.[2]

2. Employer also asserts that the referee improperly found that Claimant's participation in the van program was not voluntary. This misstates the referee's clear finding that Claimant's participation in the van program was "entirely voluntary." Findings of Fact No. 12.

However, it is clear that Claimant's testimony directly supports the findings made by the referee. Claimant testified that she believed she was required to check in at Employer's facility prior to working; that the only way she knew about how to get to work was in Employer's van; and that she was not given a phone number to call to find out where she would be going to work on a given day. Moreover, Employer had the burden of proof in this matter but offered no testimony to show that its stated policy regarding the van program was ever communicated to Claimant. Nevertheless, the referee as ultimate arbiter of credibility, *Shoemaker v. Workmen's Compensation Appeal Board (Jenmar Corp.)*, 145 Pa.Commonwealth Ct. 667, 604 A.2d 1145 (1992), relied upon Claimant's account of the van program rather than upon Employer's characterization.

Employer next argues that even if the referee's findings are supported by substantial evidence, these findings are not sufficient to support the referee's determination that the Ridesharing Act did not apply. In assessing Employer's argument, this Court must keep in mind that the Worker's Compensation Act is remedial in nature and is intended to benefit the worker; therefore, the Act must be liberally construed to effectuate its humanitarian objectives. *Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency)*, 528 Pa. 279, 597 A.2d 1116 (1991). Conversely, any restriction of the Act's application should be narrowly and strictly construed where the intent of the Legislature is not clearly expressed.[3]

Employer asserts that the referee's and the Board's decisions undercut the intent of the legislature to encourage ridesharing and carpooling: the mere fact that the passenger

---

3. *See Johnson v. Concord Mutual Ins. Co.*, 450 Pa. 614, 300 A.2d 61 (1973) (portion of a statute permitting rejection of uninsured motorist coverage detracts from the liberal public policy considerations and must therefore be narrowly and strictly construed); *Doverspike v. Black*, 126 Pa.Commonwealth Ct. 1, 535 A.2d 1217, *reaffirmed after reargument*, 126 Pa.Commonwealth Ct. 11, 541 A.2d 1191 (1988) (exceptions to liberally-construed statutory competitive bidding requirements should be narrowly construed).

boards or exits the van on his Employer's property does not preclude application of the Ridesharing Act. Indeed, the intention of the Ridesharing Act was to encourage employers to provide ridesharing and vanpooling, but only insofar as those terms are commonly understood. Under the facts presented sub judice, employer's marshaling of its employees at its place of business and subsequent dispersal to various work locations at its convenience and interest does not fall within the commonly-accepted notion of vanpooling.

■ Employer also contends that, the Ridesharing Act notwithstanding, Claimant did not suffer an injury arising in the course of her employment because her injury did not occur at her place of employment and because she was not paid until she reached her assigned work location for the day. This contention, however, is directly contradicted by the Pennsylvania Supreme Court's holding in *Peterson* which states that although the general rule is that an employer is not liable to the employee for compensation for injuries received off the employer's premises while the employee is traveling to or from work, an injury is within the scope of employment if one of the following exceptions is shown to exist: (1) the employment contract includes transportation to and from work; (2) the claimant has no fixed place of work; (3) the claimant is on a special mission for the employer; or (4) special circumstances indicate that the claimant was furthering the business of the employer.

In *Peterson*, the employer was an agency that entered into agreements with various hospitals and nursing homes for the purposes of supplying nurses and nursing assistants to those parties as their needs arose. From its central office, the employer dispatched its employees to various locations throughout the area by contacting its employees at their homes one week in advance of the assignment to inquire as to their interests in accepting the assignment. The employer did not provide transportation to the work place, did not reimburse its employees for their travel expenses, and did not include time spent commuting to and from an assigned work place in the computation of an employee's wages. The Court

held that the claimant nurse, who was injured in an automobile accident while driving herself to her assigned work location, was within the scope of her employment because she did not have a fixed place of work, and thus fell within the second exception stated above.

Although the present matter is substantially similar in many respects, Claimant was injured while riding in Employer's van, unlike the claimant in *Peterson*, while on her way from Employer's place of business to her assigned work site for the day. However, this Court fails to see how this distinguishing factor might remove Claimant's injury from being within the scope of her employment. The exception regarding whether Claimant has no fixed place of work applies here, and Claimant's injury was within the scope of her employment. Accordingly, the Board's order is affirmed.

## ORDER

AND NOW, this 19th day of March, 1993, the order of the Workmen's Compensation Appeal Board is affirmed.