**Hogue v. Soom**

C.P. of Lawrence County, nos. 10701 of 2004, 11082 of 2004.

*Dallas W. Hartman,* for plaintiff Hogue.
*Frank A. Natale II,* for plaintiff Rebeor.
*Jeffrey M. Olszewski* and *Jamie L. Lenzi,* for defendants.

COX, *J.,* January 31, 2007—Before this court for disposition is defendants' motion for reconsideration and/or application for determination of finality. Plaintiff Hogue and defendants, supporting their respective position on this motion, have submitted briefs and this court makes the following findings of fact:[1]

Plaintiff, David B. Kerr, and defendant, Crystal Carper, both deceased, and plaintiff, Douglas Rebeor, were employees of defendant Eckerd Corporation as "project team members."[2] The duties of a "project team member" involved traveling to stores owned by defendant Eckerd, in the region to which they were assigned, to perform remodeling work, such as moving and stocking shelves and installing tile. Shift times were dependent

---

1. At this time, plaintiff Rebeor has submitted no brief in support of his position.

2. Hereinafter, plaintiffs Kerr and Rebeor will be identified as "plaintiffs." The court will list plaintiffs individually only when necessary and identify as plaintiff followed by their last name.

on the required work.[3] Team members would continue to travel to the same location until they completed the assigned work and then would move on to another location.[4] During their assignment, team members had the option to ride in a van leased by Eckerd or drive his or her personal vehicle to the designated store. There was no requirement that the team members utilize the van provided by Eckerd, but a travel pay incentive was provided to those whom did travel to the worksite in the company-leased van.[5] The facts presented demonstrate that both plaintiffs took advantage of the company-provided transportation.

On the morning of August 28, 2002, at approximately 9:16 a.m., Ms. Carper was driving the Eckerd-leased van in a northerly direction from a store located on McKnight Road in Pittsburgh, Pennsylvania back to the designated pick-up/drop-off location in New Castle, Pennsylvania

---

3. During his deposition, Mr. Danny Gene Davis explained that a project team would work both days and nights during the entire project, depending on the particular task. (See depo. Danny Gene Davis, p. 42, ¶¶ 14-25.)

4. Mr. Davis testified "[Eckerd] pulled vans, van pools out of [a] site to go to a different site." However, Mr. Davis did not clarify this procedure and it is unclear if the entire team or just selected individuals would be moved to a different location if Eckerd elected to change an assignment. Nor did Mr. Davis explain the duration of the move, *i.e.,* whether it was day-to-day or for the entire length of the project. Also, Mr. Davis gave no indication that there was any intention to move the team members or any individual assigned to the McKnight Road store to a different location before completion.

5. Defendant Eckerd provided a travel pay incentive to encourage all members to ride in the company-leased van. Any member that took personal transportation to the job site would not receive the travel pay. During deposition testimony, Mr. Davis explained that this incentive was provided to build team camaraderie. (See depo. Danny Gene Davis p. 59, ¶¶12-20.)

via State Route 18, when she entered into the southbound lane, designated a "no passing zone," in an attempt to pass another vehicle. As a result of the lane change, the Eckerd-leased vehicle collided head-on with a tractor-trailer. Plaintiff Kerr and Ms. Carper sustained fatal injuries.[6] Plaintiff Rebeor experienced serious but non-life threatening injuries for which he was treated and eventually released.

On June 2, 2004, plaintiff, Ms. Pamela S. Hogue, filed a complaint in this court sounding in tort, individually and as administratrix of Mr. Kerr's estate, against the named defendants.[7] Then, on August 20, 2004, plaintiff Rebeor filed a negligence suit against Ms. Carper's estate. Subsequently, on May 18, 2006, defendants filed a motion for summary judgment on the basis that plaintiffs were acting in the course and scope of their employment, thereby restricting plaintiffs to workers' compensation claims. In response, plaintiff Kerr's estate filed a motion

---

6. At the time of the accident, there were four team members riding in the company van Mr. David Kerr, Ms. Crystal Carper, Mr. Doug Rebeor, and Mr. Barry Green. As with Mr. Rebeor, Mr. Green suffered treatable injuries. Subsequently, Mr. Green filed workers' compensation claims.

7. Ms. Hogue brought the following actions against Ms. Carper's estate, the Donlen Corporation, Jack Eckerd Corporation, Eckerd Corporation and J.C. Penney Company Inc., which includes three counts pursuant to 20 Pa.C.S. §3373 and 42 Pa.C.S. §8302 (survival action) and three counts of wrongful death in accordance with 42 Pa.C.S. §8301 and Pa.R.C.P. 2202(a). On November 10, 2004, plaintiff filed a stipulation to amend caption and dismiss less than all defendants in accordance with Pa.R.C.P. 229, thereby dismissing Donlen Corporation, Jack Eckerd Corporation and J.C. Penney Inc. as named defendants. That same day, President Judge Dominick Motto of this court entered an order dismissing these defendants under Pa.R.C.P. 229 and ordering the prothonotary to mark the caption to read as currently shown.

for partial summary judgment, claiming he was not acting within the course and scope of his employment and, therefore, not subject to the exclusivity of workers' compensation. Plaintiff Rebeor did not file any motion in response to defendant's motion for summary judgment. Then, on September 6, 2006, after oral argument and a review of the pertinent facts presented, this court granted plaintiff Kerr's motion for partial summary judgment, agreeing that plaintiff was entitled to move forward in a civil action for the death of Mr. Kerr.[8] Additionally, this court denied defendants' motion for summary judgment against plaintiffs, concluding they were not acting in the course and scope of their employment at the time of the accident. Defendants, in opposition to the order, filed this motion for reconsideration and/or application for determination of finality. This court must now address whether the order allowing plaintiff to move forward in a civil suit was proper.

Under Pennsylvania law, if an employee receives an injury that is compensable under the Workers' Compensation Act,[9] then the compensation he or she is entitled to under the Act is the exclusive remedy available. See *O'Donnell v. R.M. Shoemaker & Co.,* 816 A.2d 1159, 1162 (Pa. Super. 2003) citing *Albright v. Fagan,* 448 Pa. Super, 395, 399, 671 A.2d 760, 762 (1996); see also, 77 Pa.C.S. §481(a).[10] For an injury to be compensable under

---

8. The order issued by this court referenced the payroll ledger, which indicated plaintiff Kerr was paid from 7 p.m. August 27, 2002 until 8:30 a.m. August 28, 2002. Thus, this court concluded the accident occurred approximately 46 minutes after plaintiff Kerr's compensation ended.

9. 77 Pa C.S. §§1-2626.

10. 77 Pa.C.S. §481(a) states, "The liability of an employer under this act shall be exclusive and in place of any and all other liability to

the Act the employee must have been acting in the course and scope of his or her employment as defined in 77 Pa.C.S. §411.[11] Therefore, it is necessary for this court to determine whether plaintiffs were acting within the course and scope of their employment when the deadly car accident occurred.

Pennsylvania courts recognize the "coming and going rule," which generally states that injuries sustained while traveling to or from work are not compensable under the Workers' Compensation Act because the employee is not engaged in activities considered within the course of his or her employment. See *Williams v. W.C.A.B. (Matco Electric Co.)*, 721 A.2d 1140, 1141 n.2 (Pa. Commw. 1998), citing *Biddle v. W.C.A.B. (Thomas Mekis & Sons Inc.)*, 539 Pa. 343, 346, 652 A.2d 807, 808-809 (1995); *Bechtel Power Corp. v. W.C.A.B. (Postlethwait)*, 167 Pa. Commw. 544, 553-54, 648 A.2d 1266, 1271 (1994), *alloc. denied*, 540 Pa. 585, 655 A.2d 516 (1995). However, the "coming and going rule" is not a complete bar to recovery under the Act. Rather, Pennsylvania courts have acknowledged four exceptions, which, if met, allow

such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108."

11. 77 Pa.C.S. §411 states, "The term 'injury arising in the course of his employment' . . . shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; nor shall it include injuries sustained while the employe is operating a motor vehicle provided by the employer if the employe is not otherwise in the course of employment at the time of injury; but shall include all other injuries sustained while the employe is actually engaged in furtherance of the business or affairs of the employer, whether on the employer's premises or elsewhere . . . ."

the injured employee to obtain compensation under the Act. These exceptions are:

(1) The employment contract included transportation to and from work;

(2) The employee has no fixed place of work;

(3) The employee is on special assignment for the employer; or

(4) Special circumstances exist, demonstrating the employee was furthering the business of the employer. See *Peer v. W.C.A.B. (B & W Construction)*, 94 Pa. Commw. 540, 544, 503 A.2d 1096, 1098 (1986).

The crux of each party's position relies on the interpretation of these exceptions. Plaintiff Kerr contends that none of the exceptions are applicable. Rather, plaintiff Kerr asserts that the transportation offered by defendant Eckerd fits within the definition of a "ridesharing agreement" and, therefore, controlled by 55 Pa.C.S. §695.1 et seq.[12]

Additionally, plaintiff contends that Mr. Kerr had a fixed place of employment and, at the time of the accident, no special circumstances existed showing Mr. Kerr was furthering the business of the employer. Defendant Eckerd, on the other hand, argues that (1) Mr. Kerr did not have a fixed place of employment because he would remain in one location for a very short time before moving to a different location; (2) Mr. Kerr, as part of his employment, was provided transportation to and from assigned locations; and (3) the company-provided trans-

12. Plaintiff Rebeor has filed an action only against defendant Daniel S. Soom as administrator of the estate of Crystal Carper. Plaintiff Rebeor's suit is based on negligence. The remainder of this opinion will be centered on plaintiff Kerr; however, this court finds that Mr. Rebeor may also proceed with his claim in tort.

portation allowed the team members to build camaraderie amongst each other, thereby furthering the employer's business interest.

To this court's knowledge, there are no cases directly dealing with the issues at hand. Research has uncovered several cases in which a claimant attempted to file a workers' compensation claim and the court analyzed the Ridesharing Act to see whether recovery under the Workers' Compensation Act was allowed. See *Williams v. W.C.A.B. (City of Philadelphia)*, 850 A.2d 37 (Pa. Commw. 2004); *Bensing v. W.C.A.B. (James Morrissey Inc.)*, 830 A.2d 1075 (Pa. Commw. 2003); *Zafran v. W.C.A.B. (Empire Kosher Poultry Inc.)*, 713 A.2d 698 (Pa. Commw. 1998); *Geriatric & Medical Centers v. W.C.A.B. (Facey)*, 167 Pa. Commw. 590, 648 A.2d 1289 (1994); *Rite Care Resources v. W.C.A.B. (Davis)*, 154 Pa. Commw. 336, 623 A.2d 917 (1993); *Community Car Pool Service Inc. v. Pennsylvania Public Utility Commission*, 111 Pa. Commw. 73, 533 A.2d 491 (1987). However, this court has not found any case in which the injured employee, or those bringing suit on his or her behalf, has attempted to use the Ridesharing Act to remove the claim from the realm of workers' compensation and into civil litigation. Regardless, this court is of the opinion that the established precedent of this Commonwealth provides enough guidance to properly dispose of the issues presented.

This court believes that the central issue of the case is whether the transportation offered by defendant Eckerd qualifies as a ridesharing arrangement. If such arrangement does qualify, then the exceptions to the "coming and going" rule are irrelevant because 55 P.S. §695.3 clearly states that workers' compensation "shall not ap-

ply to a passenger injured while participating in a ride-sharing arrangement between such passenger's place of residence and place of employment." Rather, the Ride-sharing Act eliminates employer-provided transportation from the course and scope of an employee's employment. On the other hand, if the Ridesharing Act does not apply, then the exceptions to the "coming and going" rule are clearly relevant, as they will determine whether plaintiff's claim is compensable under the Workers' Compensation Act. Therefore, this court will first analyze Pennsylvania's Ridesharing Act.

Under 55 P.S. §695.1(2), a ridesharing arrangement includes "transportation of employees to or from their place of employment in a motor vehicle owned or operated by their employer." Although this language seems clear and unambiguous, Pennsylvania courts have not been quick to find a ridesharing arrangement was in existence, even though the arrangement seemed to fit neatly into the definition. Rather, each case has been determined on its own unique facts and circumstances.

In *Rite Care Resources v. W.C.A.B. (Davis)*, 154 Pa. Commw. 336, 623 A.2d 917 (1993), the court found that the Ridesharing Act did not operate to preclude an employee from receiving compensation under the Workers' Compensation Act when an employer-owned van in which she was traveling was involved in an accident en route to an assignment. The court pointed to several factors to support its decision, including: (1) claimant's participation in the van pool was inevitable, (2) the employer maintained control over the claimant while she was traveling in the van, (3) claimant was required to check in at the employer's facility; (4) prior to checking in at the employer's facility, claimant was unaware of her daily assignment;

(5) claimant was paid for the time she worked at the convalescent and nursing homes, but not the time for which she traveled in the van; and (6) the van pool was provided for the employer's benefit. Moreover, the court agreed with the referee's conclusion that the "employer used its location . . . to marshal its many employees and then disperse them to various work locations at the convenience and in the interest of the employer . . . [and] while claimant was being transported in her employer's van she was not traveling between her home and her employer's place of business but was instead traveling between her employer's place of business and claimant's work location for that particular day." *Id.* Thus, the referee concluded, and the Pennsylvania Commonwealth Court affirmed, that the Ridesharing Act did not apply to a passenger under these circumstances.

Similarly, in *Empire Kosher Poultry Inc. v. W.C.A.B. (Zafran),* 154 Pa. Commw. 276, 623 A.2d 887 (1993), *appeal denied,* 536 Pa. 648, 639 A.2d 34 (1994), the claimant, a passenger in a co-employee's vehicle, was injured in an automobile accident while returning home from work. The Workers' Compensation Appeal Board granted claimant benefits. On appeal the employer argued that claimant's injury was not compensable under the Act because the accident occurred while claimant was participating in a ridesharing arrangement. The Commonwealth Court disagreed with the employer and affirmed the Workers' Compensation Board. In reaching its conclusion, the court identified several factors to support its decision:

"[Co-worker's arrangement with] claimant was not one that can be classified as a car pool or van pool because claimant called upon him for a ride either to or from work

sporadically, frequently without advanced notice, and [co-worker] was not in a position to refuse claimant's requests. In addition, he and claimant did not share the expenses as Empire reimbursed [co-worker] for mileage. Moreover, since [co-worker's] terms of employment provide for transportation to and from work, [co-worker]'s trip home was not in furtherance of his own affairs but was in the course and scope of his employment. Thus, as [co-worker] was not merely en route home from work and his transportation of claimant was in the course and scope of his employment, the use of his automobile to transport claimant on the day of the accident was not simply incidental to his purpose in returning home from work. Therefore, this arrangement does not constitute a ridesharing arrangement and does not preclude benefits under the Worker's Compensation Act." *Id.* at 283, 623 A.2d at 891. (footnote omitted)

Defendants attempt to convince this court that in light of *Rite Care Resources* and *Empire Kosher Poultry Inc.,* defendant Eckerd did not provide a ridesharing agreement. More specifically, defendants argue that decedent was not traveling between his *home* and the employer's place of business, but rather from a pick-up/drop-off point to the employer's place of business. Defendants contend that this fact alone eliminates the Eckerd-provided van pool from the definition of 55 P.S. §695.1. However this court is not persuaded by this argument. Unlike the claimant in *Rite Care Resources:*

(1) Decedent was not required to report to the employer's facility prior to traveling to his assigned worksite.

(2) Decedent was not required to use the van on a daily basis, so his participation in the pool was not un-

avoidable. For example, decedent was free to determine whether he was going to travel to the worksite in the company-provided vehicle on any given day.

(3) Decedent was aware of his daily assignment without checking in with his employer and, therefore, would have been able to take any transportation he desired to the worksite.

(4) The van pool was provided for the employees' benefit and not the employer.

(5) The employee was paid not only for the time he worked at the store, but also for travel time minus one hour when traveling by the company-owned van.

(6) The employer did not have real control over the van. For instance, any team member with a valid driver's license was permitted to drive.

(7) Team members were not required to travel a predetermined route. Rather, they were allowed to take any route they desired.

In light of these significant differences, this court finds that the mere fact that decedent was picked up somewhere other than his home does not eliminate the van pool from the definition under 55 P.S. §695.1. In support of this contention, the court points out that unlike the claimant in Rite Care Resources, Mr. Kerr would still be considered as traveling home from work when the accident occurred. To clarify this point, the court identifies the fact that in Rite Care Resources, claimant would be required to return to her employer's facility from her worksite and retrieve her personal vehicle before traveling home. Thus, in that case, claimant could not be considered to be "coming or going" while traveling in her employer's vehicle. Conversely, in the case at hand, decedent left the assigned worksite and immediately

began his journey home. Although the paid portion of this trip could be considered to be within the course and scope of his employment in light of *Empire Poultry Inc.*, this court's prior order already determined that he was not being compensated at the time of the accident. Thus, this court finds that significant differences exist between *Rite Care Resources* and *Empire Poultry Inc.*, and the case at bar that allows this court to reach a different conclusion.

This court finds more persuasion and factual similarity in cases in which the Commonwealth Court has found the Ridesharing Act applicable. In *Bensing v. W.C.A.B. (James Morrissey Inc.)*, 830 A.2d 1075 (Pa. Commw. 2003), the court found that the Ridesharing Act applied to a claimant injured in an automobile accident. Like the decedent in the case at bar, the claimant was required to report to a specific job site until the assigned work was completed and then would be reassigned. Although the employer did not offer company-provided transportation nor reimburse employees for travel expenses, he would notify the employees who lived in a close proximity to one another that they would be working on the same assignment so they could arrange to share the commute expenses. However, the employer did not mandate that the employees participate in the car pool. Finally, the court determined that the facts presented demonstrated that the car pool primarily benefited the employees, not the employer. The court found that these factors distinguished it from *Empire Kosher Poultry Inc.*, and pursuant to section 3 of the Ridesharing Act, the claimant's injury was not a compensable workers' compensation claim.

Although there are some facts in *Bensing* that are distinguishable from the case at hand, this court finds

that enough similarities exist that require the same outcome. First, the van pool was optional, not mandatory. Next, the pick-up/drop-off point was strategically located to be a central location to all participants. Therefore, all commuters shared the same travel expense to get to and from the meeting point. Additionally, the van pool primarily benefited the team members, not the employer. Although defendants claim that the transportation arrangement afforded the employer a great benefit because it built camaraderie amongst the team members, this court finds that the monetary incentives, in the form of travel pay as well as the travel expense savings afforded by the van pool, was the primary motivation of the employees when taking advantage of the ridesharing arrangement. This court opines that if building camaraderie and benefiting the employer were the primary goals, defendant Eckerd would have made participation in the van pool a condition of employment. Accordingly, the court upholds its prior decision to allow plaintiff to move forward in her survivor and wrongful death claims against the named defendants. Correspondingly, this court need not address the applicability of the exceptions to the "coming and going" rule, as they are inconsequential under 55 Pa.C.S. §695.3.[13]

---

13. Although this court finds that it is unnecessary to analyze the exceptions to the "coming and going" rule, it is noted that the court agrees with plaintiff's position. This court finds that even if the "coming and going" rule was of consequence, no exception is applicable.

First, the court opines that the transportation provided by Eckerd was not part of decedent's employment contract. No evidence was produced indicating that employees were required to take the company-provided transportation, nor was there any requirement defendant Eckerd had to continue to provide the transportation. Rather, Eckerd was providing a service designed for employee convenience and transportation savings.

In conclusion, this court holds that 55 Pa.C.S. §695.1 et seq. ("ridesharing arrangements") is applicable and the plaintiff is entitled to move forward with her civil actions.

## ORDER

Now, January 31, 2007, this case being before the court on the petition for reconsideration and/or application for determination of finality and request for expedited review filed by the defendants, and after consideration of said petition and the various pleadings and briefs filed in

---

Next, this court finds that decedent had a fixed place of employment. The evidence demonstrates that the team members traveled to the same location until all assigned work was completed and then moved to a different site. Although Mr. Davis testified that it was possible to remove a member from a site and relocate them to a different store at any time, there was no indication that defendant Eckerd contemplated moving any of these team members prior to the incident. Moreover, even if defendant Eckerd had contemplated relocating decedent prior to the accident, the facts still demonstrate that he was killed while traveling home from his initial assignment. Therefore, this court opines that defendant clearly had a fixed situs.

Thirdly, at the time of the incident, decedent was not on a special assignment for his employer. He was traveling home in the company-provided van. He was no longer being paid, nor was he providing any service or assistance in furtherance of Eckerd's business. The court opines that decedent was clearly outside the course and scope of his employment when the accident occurred.

Finally, no special circumstances existed that demonstrated decedent was furthering Eckerd's business. As previously noted, this court rejects defendant's contention that decedent was in furtherance of Eckerd's business because he was participating in a van pool designed to build camaraderie; rather, decedent was furthering his own interests.

Thus, this court maintains that no exception to the "coming and going" rule is applicable. Therefore, defendants' argument that this case should sound in workers' compensation based on these exceptions is rejected.

response thereto, the court enters the following order and it is hereby ordered, adjudged and decreed as follows:

(1) The court incorporates its findings of fact and conclusions of law from its previous vacated order of August 31, 2006 into this order of court and attached opinion.

(2) The motions for summary judgment filed by the defendants at no. 10701 of 2004 and no. 11082 of 2004 are hereby denied.

(3) The motion for partial summary judgment filed by the plaintiff at no. 10701 of 2004 is hereby granted as the decedent David B. Kerr was not acting in the scope and course of his employment at the time of the accident but was instead participating in a ridesharing arrangement and the Workers' Compensation Act does not bar the case filed at no. 10701 of 2004.

(4) The prothonotary shall serve a copy of this order of court upon counsel of record.