IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jian Li, : 
             Petitioner : 
              : 
       v. : No. 1332 C.D. 2017
              : ARGUED:  June 6, 2018
Workers' Compensation Appeal : 
Board (New Li Nail Spa, Inc.), : 
           Respondent : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                    FILED:  October 17, 2018

Mr. Jian Li (Claimant) petitions for review of the August 24, 2017 Order of the Workers' Compensation (WC) Appeal Board (Board), which reversed the Workers' Compensation Judge's (WCJ) Decision and Order and denied Claimant's petition for workers' compensation benefits under the Pennsylvania Workers' Compensation Act (WC Act)[1] for injuries sustained while Ms. Giuying Hao, the owner, sole manager and president of New Li Nail Spa, Inc. (Employer) was driving Claimant to work.  The issues before this Court are whether the Board erred in concluding that the Ridesharing Arrangements Act (Ridesharing Act)[2] precluded

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

[2] Act of December 14, 1982, P.L. 1211, *as amended*, 55 P.S. §§ 695.1-695.9.  In 2015, Section 1 of the Ridesharing Act was repealed, and other sections were amended by the Act of

Claimant from recovering WC benefits and, if not, whether Claimant was acting in the course and scope of his employment when he was injured. For the reasons that follow, we affirm the Board.

## I. BACKGROUND

Claimant worked as a manicurist for Employer. Employer provided lodging for its employees in a residence located approximately fifteen minutes away from the salon. Reproduced Record (R.R.) at 8a, 10a, 38a. Employer also provided employees daily transportation to and from work in a van titled in Ms. Hao's name. R.R. at 46a-49a, 52a-53a, 58a.

On the morning of December 15, 2013, Ms. Hao was driving Claimant and other employees[3] to work in her van when the van was in an accident. Claimant suffered a left femur fracture and lumbar vertebral fracture as a result of this accident. R.R. at 5a.

On October 2, 2014, Claimant filed a WC Claim Petition, alleging that he sustained these injuries during the course and scope of his employment. R.R. at 166a. Employer filed an Answer, asserting that Claimant was barred from recovery under the Ridesharing Act. R.R. at 166a.

---

July 10, 2015, P.L. 130. At the time of Claimant's injury, the 1982 version of the Ridesharing Act was in effect, so we will apply that version of the statute herein.

[3] Claimant and Mr. Xiao Q. Zhou both worked for Employer as manicurists. Both were injured in the same December 2013 van accident that resulted in bodily injuries to both employees. Claimant and Zhou are represented by the same counsel who briefed the identical issues in each appeal and Employer's responsive briefs are virtually identical.

As such, the Court heard argument, *en banc*, on employees' appeals seriately. Accordingly, we incorporate the background and legal discussion set forth in our opinion in the companion appeal, *Xiao Q. Zhou v. Workers' Compensation Appeal Board (New Li Nail Spa, Inc.)* (Pa. Cmwlth., No. 1367 C.D. 2017, filed October 17, 2018).

At a March 25, 2015 hearing, the parties agreed to bifurcate the matter to first determine whether the Ridesharing Act precluded Claimant's recovery under the WC Act. If it did not preclude recovery, the matter would then proceed on the merits. R.R. at 157a, 166a, 177a.

On November 19, 2015, the WCJ issued an Interlocutory Order finding that the transportation arrangement between Claimant and Employer did not fall within the scope of the Ridesharing Act. R.R. at 176a. The matter thus proceeded on the merits.

On October 26, 2016, the WCJ issued a Decision and Order which incorporated the findings in his Interlocutory Order and granted the Claimant's Claim Petition. The WCJ found that Claimant's injuries were sustained in the course and scope of his employment and that Claimant had not fully recovered from those injuries. Consequently, the WCJ awarded Claimant disability benefits as of December 15, 2013. R.R. at 170a-71a; *see also* R.R. at 158a. However, the WCJ further concluded that, while Claimant was currently in the process of applying for his green card, he was an undocumented worker at the time of the accident and, thus was not eligible for workers' compensation benefits. For this reason Claimant's benefits were immediately suspended. R.R. at 171a.

Employer appealed to the Board. On August 24, 2017, the Board reversed the WCJ's Decision, concluding that: the Ridesharing Act was applicable; and Claimant was precluded from recovering WC benefits. R.R. at 155a-63a. This appeal followed.[4]

---

[4] Our scope of review in a workers' compensation appeal is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. *City of Scranton v. Workers' Comp. Appeal Bd. (Roche)*, 909 A.2d 485, 489 n.1 (Pa. Cmwlth. 2006).

## II.  ISSUES

Claimant's central issue is whether the Board erred in finding that Claimant was not in the course and scope of his employment when he was injured.  The Employer asserts that the Ridesharing Act is applicable and bars Claimant's right to recovery under the WC Act.  Because whether the Ridesharing Act applies is a dispositive issue, we will address that issue first.

## III.  DISCUSSION

The Ridesharing Act itself contains explicit guidance regarding whether an employee is eligible for WC benefits for injuries sustained while traveling to or from work.  Section 3 of the Ridesharing Act provides:

> **"The [WC] Act,"** shall not apply to a passenger injured while participating in a **ridesharing arrangement** between such passenger's place of residence and place of employment. **The [WC] Act** shall apply to the **driver** of a company owned or leased vehicle used in a ridesharing arrangement.

55 P.S. § 695.3 (emphasis added).  Under Section 1 of the Ridesharing Act, a "Ridesharing Arrangement" includes:

> *any one* of the following forms of transportation:[5]
>
> **(1)**  The transportation of not more than 15 passengers where such transportation is incidental to another purpose of the driver who is not engaged in transportation as a business. *The term shall include ridesharing arrangements commonly known as carpools and vanpools, used in the transportation of employees to or from their place of employment.*
>
> **(2)**  *The transportation of employees to or from their place of employment in a motor vehicle owned or operated by their employer.*
>
> ….

---

[5] There are four types of ridesharing arrangements in Section 1 of the Ridesharing Act. Only the two identified above are relevant to this appeal.

4

55 P.S. § 695.1 (emphasis added).

Here, the WCJ determined that since the Claimant and Employer relied on each other to transport Claimant to work, their arrangement was not a "ridesharing arrangement" under the Ridesharing Act. R.R. at 176a. Rather, the WCJ determined that their transportation arrangement constituted an "employment agreement," which is an exception to the general "coming and going rule"[6] under the WC Act, and, therefore, Claimant was in the course and scope of his employment at the time of the accident.

In reaching a decision, the WCJ relied extensively on *Empire Kosher Poultry, Inc. v. Workmen's Compensation Appeal Board (Zafran)*, 623 A.2d 887 (Pa. Cmwlth. 1993), to support his determination that the Ridesharing Act did not apply. R.R. at 175a-76a. We conclude, however, that the WCJ's reliance on this case is misplaced.

In *Empire Kosher*, the claimant was injured in a car accident while being driven home from work by his co-worker in a car owned by the co-worker. The Board determined that substantial evidence supported the referee's finding and

---

[6] The "coming and going rule" is not a complete bar to recovery under the WC Act. Our Court has recognized four exceptions to this rule, which are intended to protect employees who are specifically acting in the course of their employment while traveling to or from work. *See Bensing v. Workers' Comp. Appeal Bd. (James D. Morrissey, Inc.),* 830 A.2d 1075, 1078 (Pa. Cmwlth. 2003). The exceptions are:

1. The **employment agreement** between a claimant and employer includes transportation to and from work;
2. The employee has no fixed place of work;
3. The employee is injured while on a special assignment for the employer; or
4. Special circumstances indicate that the employee was furthering the business of the employer.

*Id.* (emphasis added).

5

concluded that the claimant was entitled to benefits. On appeal to this Court, the claimant's employer argued that his injury was not compensable because the accident occurred while the claimant was participating in a ridesharing arrangement. In affirming the Board, this Court determined:

> [Co-worker's arrangement with] [c]laimant was not one that can be classified as a carpool or vanpool because [c]laimant called upon him for a ride either to or from work sporadically, frequently without advanced notice, and [co-worker] was not in a position to refuse [c]laimant's requests. In addition, he and [c]laimant did not share the expenses as Empire reimbursed [co-worker] for mileage. Moreover, since [co-worker's] terms of employment provide for transportation to and from work, [co-worker]'s trip home was not in furtherance of his own affairs but was in the course and scope of his employment. Thus, as [co-worker] was not merely en route home from work and his transportation of [c]laimant was in the course and scope of his employment, the use of his automobile to transport [c]laimant on the day of the accident was not simply incidental to his purpose in returning home from work. Therefore, this arrangement does not constitute a ridesharing arrangement and does not preclude benefits under the [WC Act].

*Empire Kosher,* 623 A.2d at 891.

Unlike this case, in *Empire Kosher*, a **co-worker, not the employer, occasionally** drove the claimant home from work. The co-worker's specific terms of employment provided for transportation to and from work and reimbursement for driving expenses. More importantly, our Court analyzed *Empire Kosher* under Section 1 of the Ridesharing Act and determined that this arrangement could not be classified as a "carpool or vanpool."

Here, it is undisputed that Employer provided Claimant's transportation to work each day and that Employer owned and operated the vehicle used to provide transportation to Claimant and other employees. This transportation arrangement falls squarely within the plain and unambiguous language of Section 1(2) of the

6

Ridesharing Act, namely: **"The transportation of employees to or from their place of employment in a motor vehicle owned or operated by their employer."** 55 P.S. § 695.1(2) (emphasis added). For this reason, we conclude that the Ridesharing Act is applicable, and, therefore, the WC Act does not apply.

We also conclude, that there is no evidence in the record to support the WCJ's finding of an "employment agreement." While Claimant and Employer may have mutually benefited from their transportation arrangement, there is no evidence that this "vanpool" arrangement was an actual job requirement or that Claimant would have lost his job had he declined Employer's offer of transportation. This transportation arrangement did not impact Claimant's duties as a manicurist, but simply involved Claimant getting back and forth to work in a van.

Finally, we reject Claimant's assertion that Section 1(2) of the Ridesharing Act is inapplicable because the van was not actually owned or operated by New Li Nail Spa, Inc., but by its owner, Ms. Hao. "A corporation is a creature of legal fiction which can 'act' only through its officers, directors and other agents." *Daniel Adams Assoc., Inc. v. Rimbach Publ'g, Inc.*, 519 A.2d 997, 1000 (Pa. Super. 1987). Further, "[a]cts of a corporate agent which are performed in the scope of his or her authority are binding on the corporate principal." *Id.*

It is undisputed that Ms. Hao is the owner, sole manager, and president of New Li Nail Spa, Inc. Ms. Hao and New Li Nail Spa, Inc. are essentially indistinguishable. The van was titled in Ms. Hao's name, and Ms. Hao was driving Claimant to his employment in her van when the accident occurred.[7] Therefore,

---

[7] Claimant also argues that he was not being transported from his "residence," relying on the definition of "residence" set forth in 4 Pa. Code § 95.2. However, this regulation is irrelevant to the instant appeal. The regulation pertains to the Pennsylvania Civil Service Commission rules governing examinations required for civil service employees' appointment and promotion.

Claimant's argument that Employer was not operating the van at the time of his injury lacks merit.

## IV.  CONCLUSION

The Ridesharing Act applies here, and therefore the WC Act does not apply. Accordingly, because we conclude that the Board properly reversed the WCJ's Decision, we affirm the Board's Order.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jian Li,                   :
          Petitioner        :
                             :
         v.                  :   No. 1332 C.D. 2017
                             :
Workers' Compensation Appeal    :
Board (New Li Nail Spa, Inc.),     :
              Respondent     :

O R D E R

AND NOW, this 17th day of October 2018, the August 24, 2017 Order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jian Li, : 
                          Petitioner : 
                                    : 
                   v. :   No. 1332 C.D. 2017
                                    :   Argued: June 6, 2018
Workers' Compensation Appeal : 
Board (New Li Nail Spa, Inc.), : 
                     Respondent : 

BEFORE:    **HONORABLE MARY HANNAH LEAVITT,** President Judge
               **HONORABLE RENÉE COHN JUBELIRER,** Judge
               **HONORABLE P. KEVIN BROBSON,** Judge
               **HONORABLE PATRICIA A. McCULLOUGH,** Judge
               **HONORABLE ANNE E. COVEY,** Judge
               **HONORABLE MICHAEL H. WOJCIK,** Judge
               **HONORABLE ELLEN CEISLER,** Judge

**OPINION NOT REPORTED**

**DISSENTING OPINION BY**
**JUDGE COHN JUBELIRER**                   **FILED: October 17, 2018**

Respectfully, I dissent in this case for the same reasons as in *Zhou v. Workers' Compensation Appeal Board (New Li Nail Spa, Inc.)* (Pa. Cmwlth., No. 1367 C.D. 2017, filed Oct. 17, 2018), which was seriately argued with this matter.[1] As

---

[1] The claimant in *Zhou* was injured in the same car accident and was awarded temporary total disability benefits as of the date of the car accident, as well as 20 weeks for the claimant's disfigurement claim.

explained there, I do not read the Ridesharing Arrangements Act (Ridesharing Act)[2] as broadly as my colleagues do as removing **all** injuries sustained while an employee is using employer-provided transportation from the scope of the Workers' Compensation Act[3] (WC Act). Instead of a sword slicing coverage from claimants who would otherwise fall within the ambit of the WC Act, I believe the Ridesharing Act was intended to shield employers from expanded WC liability based solely on an employee's participation in ridesharing arrangements. As in *Zhou*, I believe that Jian Li (Claimant) had an employment agreement that would otherwise have required New Li Nail Spa, Inc. (Employer) to provide coverage under the WC Act. However, here, unlike in *Zhou*, there remains an issue about the extent to which this Claimant would be entitled to WC benefits because of his undocumented status. The Board did not address this issue; I would therefore reverse and remand for the Board to address this outstanding issue. For these reasons, I must respectfully dissent.

The purpose of the Ridesharing Act is "to encourage ride[]sharing arrangements in Pennsylvania" in order to get "more people [to] use[] carpools or bus pools to get to work." S. 166th Sess., Feb. 8, 1982, at 1826 (Senate Legislative Journal);[4] *see also Rite Care Res. v. Workmen's Comp. Appeal Bd. (Davis)*, 623 A.2d 917, 920 (Pa. Cmwlth. 1993) (stating the Ridesharing Act was intended "to encourage employers to provide ridesharing and vanpooling"). An increase in such

---

[2] Act of December 14, 1982, P.L. 1211, *as amended*, 55 P.S. §§ 695.1-695.9. Section 1 of the Ridesharing Act was repealed, other sections were added or amended, and it was given the title "Ridesharing Arrangements Act" by the Act of July 10, 2015, P.L. 130. However, we apply the 1982 version of the Ridesharing Act because that was what was in effect at the time of Jian Li's injury, which occurred in December 2013.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

[4] Available at http://www.legis.state.pa.us/WU01/LI/SJ/1982/0/Sj19820208.pdf (last visited Oct. 15, 2018).

arrangements would, it was hoped, get "commuters into carpools," reduce the number of cars on the roads, reduce traffic jams, and save "millions of gallons of gasoline . . . every day."[5]  Senate Legislative Journal at 1826.

Generally, under the "going and coming" rule,[6] employees injured when commuting to and from work are not covered by the WC Act because they are not in the course and scope of their employment.[7]  *Holler v. Workers' Comp. Appeal Bd. (Tri Wire Eng'g Sols., Inc.)*, 104 A.3d 68, 71 (Pa. Cmwlth. 2014).  There are exceptions to the going and coming rule, which include where:  an employment agreement "includes transportation to and from work"; the employee "has no fixed place of work"; the employee is injured while on a special assignment for the employer; or special circumstances indicate that the employee "was furthering the business of the employer."  *Id.*

If merely participating in an employer encouraged or provided ridesharing arrangement could be viewed as furthering the business of the employer or a special assignment, it could transform an injury that would be non-compensable under the WC Act into a compensable injury.  This application of the WC Act would "indirectly discourage these" commuting arrangements, and, to prevent this, the

---

[5] The circumstances that led to the enactment of the Ridesharing Act, it can be noted, still exist today.

[6] This is also referred to as the "coming and going" rule.

[7] Section 301(c)(1) of the WC Act defines "injury" as "an injury to an employe, . . . arising **in the course of his employment and related thereto**."  77 P.S. § 411(1) (emphasis added).  "[I]njuries occur during the course and scope of employment when they are 'sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere.'"  *Holler v. Workers' Comp. Appeal Bd. (Tri Wire Eng'g Sols., Inc.)*, 104 A.3d 68, 70-71 (Pa. Cmwlth. 2014) (quoting Section 301(c)(1) of the WC Act, 77 P.S. § 411(1)).  "Whether a claimant was acting within the course and scope of his employment when his injury occurred is a question of law and is reviewable de novo."  *Id.* at 70 n.3.

Ridesharing Act made the WC Act inapplicable to ridesharing.[8]  Senate Legislative Journal at 1826; *see also* Section 3 of the Ridesharing Act, 55 P.S. § 695.3 (stating the WC Act "shall not apply to a passenger injured while participating in a ridesharing arrangement between such passenger's place of residence and place of employment").  As we have previously explained, "[t]he Ridesharing Act operates to prevent claimants from receiving [WC] benefits when they are **merely commuting to and from work**." *Bensing v. Workers' Comp. Appeal Bd. (James D. Morrissey, Inc.)*, 830 A.2d 1075, 1080 (Pa. Cmwlth. 2003) (emphasis added).  We have therefore concluded that an employee's **mere participation** in a ridesharing arrangement cannot be used "**as a basis for asserting that he was furthering the business of [the e]mployer** or that he was on a special assignment for [the e]mployer while participating in the" ridesharing arrangement.  *Id.* (emphasis added).  The Ridesharing Act assures that an employee cannot be found to be furthering an employer's interests and, thus, within his course and scope of employment, merely by participating in a ridesharing arrangement.

However, I do not believe the Ridesharing Act was intended to transform an injury that would otherwise have been **compensable** under the WC Act as an exception to the going and coming rule into a **non-compensable** injury.  In this case, as in *Zhou*, the Workers' Compensation Judge (WCJ) found that Claimant had an

---

[8] The Ridesharing Act also renders inapplicable to ridesharing arrangements certain provisions of other statutes, such as:  the Public Utility Code, 66 Pa. C.S. §§ 101-3316; insurance laws and regulations related to motor carriers or using a motor vehicle for a commercial purpose; the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101-10004 (related to the imposition of sales tax); and municipal tax or licensing laws.  *See* Sections 2, 6, and 7 of the Ridesharing Act, 55 P.S. §§ 695.2, 695.6, 695.7.  Moreover, laws associated with the payment of minimum wage, overtime, or the number of hours an employee may work are inapplicable "to employees while traveling between their residences and places of employment."  Section 8 of the Ridesharing Act, 55 P.S. § 695.8.

employment agreement with his Employer that included transportation. Such an agreement, which can be express or implied and is determined by the totality of the circumstances, is an exception to the going and coming rule. *Wachs v. Workers' Comp. Appeal Bd. (Am. Office Sys.)*, 884 A.2d 858, 862 (Pa. 2005). Because of such an agreement, the multiple injuries Claimant suffered in this car accident would be compensable under the WC Act. I believe there is substantial evidence to support the WCJ's finding in this regard.

Both Claimant and Guiying Hao, Employer's Owner/President (Owner), testified, through interpreters, that Owner provided Claimant, and other employees, with transportation from the Employer-provided place to live to Employer's nail salon and back. (Reproduced Record (R.R.) at 8a-10a, 19a, 47a-49a.) Claimant explained that if Owner did not drive him, he had no way of getting to work, and he did not know where the place Employer provided him to live was or how far away the nail salon was, but did know that it was about a 10-minute drive from the Employer-provided housing. (*Id.* at 10a, 18a-19a.) Owner testified that Employer provided a place to live, food, and transportation to its employees, which includes Claimant, and that she would pick up those employees from that housing and drive them 12 to 15 minutes to the nail salon every day prior to the accident. (*Id.* at 47a-49a, 52a-53a.) Owner agreed that, in order to run her business, she needed to drive the employees to work. (*Id.* at 58a.) A reasonable mind would accept this testimony as support for the conclusion that Claimant's employment included his daily transportation to and from work. As such, this testimony constitutes substantial evidence to support the WCJ's finding. *Wawa v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008).

RCJ - 5

The majority states that there was no evidence that the "'vanpool' arrangement was an actual job requirement or that Claimant would have lost his job had he declined Employer's offer of transportation." *Li v. Workers' Comp. Appeal Bd. (New Li Nail Spa, Inc.)* (Pa. Cmwlth., No. 1332 C.D. 2017, filed Oct. 17, 2018), slip op. at 7. However, Claimant credibly testified that he had no way to get to work if Owner did not drive him the approximately 10 minutes from the Employer-provided place to live to the nail salon. (R.R. at 10a, 18a-19a.) As reflected in the record, Owner drove Claimant and other employees to the nail salon every day prior to the accident and that, in order for Owner to run her business, she needed to drive those employees to work. (R.R. at 47a-49a, 52a-53a.) Had Claimant stopped coming to work because "he declined Employer's offer of transportation," he would not have kept his job as a manicurist. *Li*, slip op. at 7. Considering the totality of circumstances, *Wachs*, 884 A.2d at 862, the WCJ did not err in concluding that an employment agreement for transportation existed between Employer and Claimant.

Had Claimant not had an employment agreement with Employer that included transportation to and from work, I would agree with the majority that merely participating in a ridesharing arrangement would not bring him within the WC Act. That is the import of the Ridesharing Act. However, in this case, as in *Zhou*, I believe the issue is whether the Ridesharing Act should be broadly interpreted and applied to provide a blanket exclusion of WC benefits for **any** injuries sustained while an employee is traveling to and from work in a motor vehicle owned or operated by the employer, even if the employee would otherwise be within the course and scope of his or her employment. Such a broad interpretation and application would eliminate WC coverage for employees, like Claimant, who would otherwise meet an exception to the going and coming rule.

This is a close case because the language used in the Ridesharing Act can be interpreted to provide such a blanket exclusion. However, I do not believe that is the intent of this provision and would interpret the Ridesharing Act more tailored to accomplishing its objective of encouraging ridesharing, without making such a sweeping change to the WC Act. I would therefore find that, because this Claimant did have an agreement with Employer for transportation to and from work, which is an exception to the going and coming rule, the Ridesharing Act did not apply to bar his compensation under the WC Act. This is consistent with the fact that the WC Act is remedial in nature and must be liberally construed to effectuate its humanitarian purposes. *Rite Care Res.*, 623 A.2d at 920.

Although not addressed by the majority because of its conclusion that the WC Act is inapplicable, unlike in *Zhou*, slip op. at 3, where the WCJ awarded ongoing medical and wage loss benefits, the WCJ here suspended Claimant's wage loss benefits (but not the medical benefits) as of the date of the car accident, (WCJ Order). He did so based on his finding that Claimant was an undocumented worker and his conclusion that Claimant's loss of earnings was due to his undocumented status, rather than the injuries he sustained in the car accident. *See Cruz v. Workers' Comp. Appeal Bd. (Kennett Square Specialities)*, 99 A.3d 397, 407-08 (Pa. 2014) (explaining that, because disability or wage loss must be the result of the work-related injuries in order to be compensable under the WC Act, a wage loss that is due to something other than that injury, such as a claimant's immigration status, is not compensable and wage loss benefits may be suspended).[9] Claimant challenged that finding and conclusion in his appeal to the Board, (Claimant's Appeal, Certified Record Item 10), which the Board did not address because it held the Ridesharing

---

[9] The Supreme Court, in *Cruz*, also explained that a claimant does not bear the burden of proving his employment eligibility status under federal immigration law. 99 A.3d at 407.

Act precluded the award of any WC benefits to Claimant. (Board Opinion at 6 n.8.) Because of the Board's holding, the Board has not yet addressed the issue of whether Claimant's wage loss benefits should have been suspended based on his undocumented status. Therefore, this issue is not yet before the Court. Accordingly, I would remand in order for the Board to address this outstanding issue.

For the foregoing reasons, I respectfully dissent from the majority and would reverse the Board's Order and remand this matter for the Board to address Claimant's appeal.

 

 

_____
**RENÉE COHN JUBELIRER,** Judge

 

Judge McCullough joins in this dissenting opinion.