648 A.2d 1266

**BECHTEL POWER CORPORATION, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (POSTLETHWAIT), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 1, 1994.

Decided Sept. 22, 1994.

Gregory D. Geiss, for petitioner.

William E. Haggerty, for respondents.

Before COLINS and NEWMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

This is an appeal by employer, Bechtel Power Company (Bechtel), from an order of the Workmen's Compensation Appeal Board (Board) awarding fatal claim benefits to Carolyn G. Postlethwait (Claimant), widow of David Lee Postlethwait (Decedent).

At the time of his death, Decedent was working for Bechtel as a supervising plumber and pipefitter at a construction site in Limerick, Pennsylvania. He was killed when he was involved in an automobile accident while returning home from his job site. Claimant, thereafter, filed a petition for fatal claim benefits.

The evidence as to Decedent's work relationship with Bechtel was through the testimony of Claimant, John P. Grissinger (Grissinger), Paul E. Yecker (Yecker), and Paul John Mazakas (Mazakas).[1]

Claimant testified that she and Decedent were married and lived together at 1517 Rothsville Road, Lititz, Pennsylvania (S.R. 3b, 5b); that Decedent worked for Bechtel Power Corporation at the Limerick nuclear power plant as the foreman of a unit of plumbers, pipefitters and welders (S.R. 5b); that at the time of the accident resulting in his death, Decedent was returning from the Limerick job site to his home (S.R. 15b); that Decedent drove his car from home to the Ephrata interchange of the Pennsylvania Turnpike (Turnpike) where he joined a car-pool which proceeded to Limerick and returned to the interchange at the end of the work day. (S.R. 16b–17b).

Yecker, who lived in Lancaster, Pennsylvania, was a member of the Plumber and Pipefitters Union, Local 520. He worked for Bechtel at its Limerick job site beginning in 1979 to about 1985 as a pipe welder. Yecker knew Decedent through Local Union 520, as well as, through working with him at Limerick. (R.R. 39a). Yecker testified that he, the

1. We note that the testimony relating to Decedent's relationship with Bechtel was presented through the testimony of Claimant's witnesses; Bechtel did not submit evidence concerning said relationship.

Decedent and another co-worker, Mazakas, formed a car-pool, whereby each would drive his own car to the Ephrata interchange of the Turnpike and then proceed to the Limerick job site, together, in one car. At the end of each work day they would then return, together, to the Ephrata interchange, retrieve their own cars and proceed home. Yecker explained that they would alternate, every third day, the person who was to drive from the interchange to the job site and back again. Yecker explained that this arrangement lasted for "roughly maybe two, three years." (R.R. 40a–41a.)

On the date of Decedent's accident, Yecker drove the round trip from the interchange to Limerick and back (R.R. 42a); Mazakas was not part of the car-pool on this date as he was working late. (R.R. 43a.) Yecker and Decedent arrived at the interchange, after work, at about 5:10 P.M., at which time Decedent got into his own car and drove away. (R.R. 44a.)

Yecker explained that Local Union 520 was not specifically assigned to the Limerick job; Limerick was within the territory of Local Union 420. However, when Local 420 needed manpower it would call other Locals for workers as other Locals would call it if extra men were needed. (R.R. 47a.)

Yecker testified that during the time he worked for Bechtel at Limerick with Decedent, he, as well as all the employees at the site, including the electricians and other tradesmen, received a $5.00 a day travel expense. (R.R. 46a.) He further stated that people from as far away as Texas, California and Florida, to as close as two or three miles away were working at Limerick and that all received the same $5.00 per day travel expense. (R.R. 48a.) He noted that workers were not required to list their mileage, gasoline expense or tolls in order to receive the $5.00 per diem. Nor were they instructed by Bechtel as to what route to take to Limerick. They were not required or instructed to stop and pick up supplies on behalf of Bechtel on their way to or from work. (R.R. 49a.)

Mazakas' testimony appears at R.R. 51a–54a and is limited to his answering in the affirmative in corroborating Yecker's testimony which was given in his presence.

Grissinger testified that in March of 1981 and prior thereto he was a self-employed administrator [2] of pension plans, profit sharing plans and insurance programs of the Plumbers and Pipefitters Local No. 520, of which Decedent was a member. (R.R. 16a–17a.) Decedent did not hold any office in Local 520, but he was classified as a "journeyman," which Grissinger defined as one having the ability of a master craftsman of his trade, obtained by going through a four year apprentice program under federal regulations following which he was designated a master craftsman, or "journeyman." (R.R. 18a.)

Decedent obtained work through Local 520 and would go to job sites assigned him by the union either within the Local's area or where there was a call for men outside of Local 520's area. (R.R. 18a.) Grissinger explained that when a Local Union 520 member worked outside of the local's territory, contributions to his benefit plan would be made to the Local Union in whose jurisdiction he was working, which would then transmit the contributions to his home Local. (R.R. 19a.)

In March of 1981, Local 520 had bargaining agreements with about fifteen employers in the Harrisburg area (Ex. C–4) and Local 420 likewise had a bargaining agreement with employers in the Philadelphia area.[3] (Ex. C–3.) Both agreements provided that Local 520 and Local 420 members would be paid a daily travel expense. (R.R. 23a–24a.)

At the times relevant herein, Grissinger testified that there was a national contract with the Plumbers and Pipefitters Union specifying that those employers to said contract were not bound by the Local bargaining agreements of the union; Bechtel was a party signatory to the national contract. (R.R. 31a.) Whether an employer to the national contract paid a travel allowance as provided for in the local contracts was, technically optional; however, Grissinger explained that if an employer wanted union workers at his job site, he would have to pay the travel expense provided for in the Local agreements. (R.R. 32a–33a.)

2. Grissinger retired in April of 1984.

3. The record does not reveal the number of such employers, but the Philadelphia area included the Limerick location.

Based on the foregoing testimony, the referee entered an order dated January 10, 1989 dismissing Claimant's petition. The referee, made the following relevant findings in his decision:

7. At the time of his accident, the Decedent was driving home from the Ephrata Turnpike exit [sic] was employed by the Defendant under an agreement with the Plumber and Pipe Fitters Local Union 420 of Philadelphia. Pursuant to a reciprocal agreement with the Plumber and Pipe Fitters Local Union 520 of Harrisburg, the Decedent was employed at the Limerick construction site and in accordance with the Contract, members of the Union received a $5.00 per diem travel allowance regardless of the distance they traveled. In addition, Defendant did not provide transportation to Union members nor did it control the means of transportation or routes taken.

8. This Referee finds that Decedent's employment with the Defendant did not require the Decedent to travel to various and sundry job sites [sic] finds no evidence indicating that while the Decedent was in the Defendant's employ, he worked anywhere other than at the Limerick construction site.

9. This Referee finds at the time of his accident, the Decedent was not in the furtherance of the Defendant's business.

10. This Referee finds, based on thorough review of all the evidence, that the Claimant [Decedent] was not in the course of his employment at the time of his auto accident of March 27, 1981 and did not suffer a compensable injury on March 27, 1981.

(R.R. 77a.)

Based upon his findings, the referee made the following relevant conclusion of law:

2. Claimant has failed to satisfy her burden of proving that the Decedent was in the course of employment at the time of his accident on March 27, 1981 consistent with Section

301(c)(1) and 301(c)(2) of the Pennsylvania Workmen's Compensation Act, as amended.

(R.R. 77a.)

Claimant timely appealed the referee's decision and order to the Board which filed an order and opinion in support thereof on September 28, 1990, in which it wrote, in part, the following:

[D]ecedent, a journeyman pipefitter, did not work out of a specific factory or office; rather, *he would travel from his home to various job sites.* On the date of the fatal accident, Decedent *was on his way from his home in Lancaster, Pennsylvania, to a job site at the Limerick Nuclear Power Plant in Limerick, Pennsylvania.*

Under Decedent's contract with his union, he was to be paid for travel expense incurred during the performance of his employment *including travel to and from a job site.*

. . . .

*[D]efendant [Bechtel] specifically compensated Decedent for traveling the long distances to and from the various nuclear power plants.*

. . . .

*[I]n recognition of such work conditions, a per diem was paid to compensate union employees. These payments were made in recognition of the unique character of the employer's business and to make such continued employment of skilled labor advantageous.*

(R.R. 83a, 87a.) (Emphasis added). (Record citations omitted).

The Board then concluded:

Given this set of facts, we are satisfied that Decedent's employment contract include transportation to and from work, and that such transportation proximately furthered Defendant's business.

(R.R. 87a.)

Based upon its foregoing opinion, the Board entered an order reversing the referee's decision and order of January 10,

1989, "on the issue of Claimant's [Decedent] being within the course and scope of his employment,"[4] (R.R. 88a), and remanded to the referee:

> [F]or the limited purpose of determining only the amount of compensation benefits due to Claimant based upon the foregoing Opinion. . . .

(R.R. 88a.)

On February 14, 1992, the referee, pursuant to the Board's remand order of September 28, 1990, filed an order awarding Claimant fatal claim benefits; Bechtel timely appealed to the Board. On January 5, 1994, the Board affirmed the referee's award of benefits to Claimant entering the following order:

> The defendant [Bechtel] has appealed the decision of the referee awarding benefits. All the issues raised in the defendant's appeal were covered in the prior [September 20, 1990] Board's opinion which reversed referee's denial of benefits. The Board affirms the referee on the basis of the prior opinion in this matter.

On January 24, 1994, Bechtel appealed the Board's order to this Court raising the following two issues for our review:[5]

> I. Did the Workers' Compensation Appeal Board Err in substituting their own findings of fact on key issues for those of the Workers' Compensation Judge?

> II. Did the Workers' Compensation Appeal Board Err in concluding that decedent was in the course of his employment at the time of his injury?

> (See, Brief for Petitioner, Statement of Questions Involved, p. 3.)

4. Bechtel appealed the Board's order of September 28, 1990 to us, which is docketed at 2175 C.D.1990; on December 11, 1990, we dismissed Bechtel's petition for review as being interlocutory.

5. Bechtel does not dispute that Decedent, alone and driving his own car, was returning to his home from work on March 26, 1981 when he was involved in a collision with another car; that following surgery for internal injuries, he died on March 27, 1981 as the result of "cardiac arrest due to arrhythmia of the heart"; and that his death was related to Decedent's automobile accident. See Referee's findings of fact Nos. 4, 5 and 7 at R.R. 76a–77a.

■ Initially, we note that our scope of review, as well as the Board's scope of review, in a workmen's compensation matter is limited to determining whether the referee committed an error of law, whether any necessary findings of fact were not supported by substantial evidence or whether constitutional rights were violated. *Carrier Coal Enterprises v. Workmen's Compensation Appeal Board (Balla)*, 118 Pa.Commonwealth Ct. 201, 544 A.2d 1111 (1988). It is the referee who is exclusively charged with the duty of making credibility determinations and findings of fact in a workmen's compensation proceeding; said findings being binding on both the Board and this Court if supported by substantial evidence. *Edwards v. Workmen's Compensation Appeal Board (Hunlock Tp.)*, 137 Pa.Commonwealth Ct. 70, 585 A.2d 56, *appeal denied*, 528 Pa. 633, 598 A.2d 286 (1990); *Pollard v. Workmen's Compensation Appeal Board (North Strabane Tp.)*, 131 Pa.Commonwealth Ct. 339, 570 A.2d 143, *appeal denied*, 525 Pa. 665, 583 A.2d 795 (1990).

In *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board*, 531 Pa. 287, 612 A.2d 434 (1992), the Supreme Court discussed the standard of review applicable in workmen's compensation decisions. The Court, in stating that the "standard of review applicable to such cases has already been firmly established by this Court," went on to address the Board's authority in reviewing referee decisions. *Bethenergy*, 531 Pa. at 290, 612 A.2d at 435. The Court stated as follows:

[T]he Board's function is primarily appellate in nature. In cases such as the present one, where the Board has taken no additional testimony, the Board is required to accept the facts found by the referee if they are "supported by competent evidence." 77 P.S. § 854; *Croll v. Workmen's Compensation Appeal Board (Dorr–Oliver, Inc.)*, 511 Pa. 79, 84, 511 A.2d 1311, 1313 (1986). See also *Arena v. Packaging Systems Corp.*, 510 Pa. [34] at 37 n. 2, 507 A.2d [18] at 19 n. 2 (referee has ultimate fact-finding role in workmen's compensation cases); *Beebe v. Workmen's Compensation Appeal Board (Bendix Corp.)*, 112 Pa.Commw. 578, 581–82, 535 A.2d 1236, 1238 (1988) (ultimate fact finder in a workmen's

compensation case is the referee, and the referee's role is to assess credibility and resolve conflicts in the testimony).

In short, the appellate role is not to reweigh the evidence or to review the credibility of the witnesses. Shinsky, supra; Croll, supra. Rather, the Board or reviewing court must simply determine whether, upon consideration of the evidence as a whole, the referee's findings have the requisite measure of support in the record.

*Bethenergy Mines,* 531 Pa. at 292, 612 A.2d at 437.

Further, in *Forbes Pavilion Nursing Home, Inc. v. Workmen's Compensation Appeal Board,* 18 Pa.Commonwealth Ct. 352, 352–353, 336 A.2d 440, 442 (1975), we stated:

> This Court, in *Universal Cyclops Steel Corporation v. Krawczynski,* 9 Pa.Commonwealth Ct. 176, 305 A.2d 751 [757] (1973) held that without taking additional evidence The Workmen's Compensation Appeal Board (Board) lacks power on appeal to substitute its own findings of fact for those of the referee where the referee's findings are supported by substantial competent evidence.

See also *Workmen's Compensation Appeal Board v. International Furnace Co.,* 21 Pa.Commonwealth Ct. 390, 345 A.2d 780 (1975).[6]

Whether a Claimant was acting within the scope of his employment at the time of his injury is a question of law to be determined on the basis of the findings of fact. *William F. Rittner Co. v. Workmen's Compensation Appeal Board (Rittner),* 76 Pa.Commonwealth Ct. 596, 464 A.2d 675 (1983). Generally, injuries received by an employee travelling to or from work are not compensable. *Wolfe v. Workmen's Compensation Appeal Board,* 65 Pa.Commonwealth Ct. 97, 442 A.2d 12 (1982). There are, however, four exceptions to this rule, namely, (1) the employment contract included transportation to and from work; (2) the claimant has no fixed place of work; (3) the claimant is on special assignment for the em-

---

**6.** See *McGartland v. Ampco–Pittsburgh Corporation,* 489 Pa. 205, 413 A.2d 1086 (1980) (where the referee's findings are supported by competent evidence, the Board cannot take additional evidence and substitute its own findings of fact for those of the referee).

ployer; or (4) special circumstances are such that the claimant was furthering the business of the employer. *Jones v. Workmen's Compensation Appeal Board (Rehabilitation Coordinators, Inc.)*, 88 Pa.Commonwealth Ct. 426, 489 A.2d 1006 (1985). Where an employee falls within one of these exceptions, he continues to be within the scope of employment although traveling to or from his employment.

Initially, we note that the Board, in rendering its decision and order in this matter did not receive additional evidence. Nevertheless, the Board, in its opinion, portions of which are set forth hereinabove and highlighted, sets forth facts which were not supported by substantial evidence in the record and which were made in disregard of, and contrary to, the referee's findings which are supported by substantial evidence. The Board, further, went on to use these facts as support for its ultimate conclusion and order to reverse the referee. Particularly, we note that the Board, in rendering its determination, emphasized Decedent's receipt of a "per diem" travel expense as part of his compensation. The Board concluded that said expense was in recognition of the fact that "Decedent was a member of a skilled work force, specializing in the building of nuclear power plants, Defendant specifically compensated Decedent for travelling the long distances to and from the various nuclear power plants." (R.R. 87a.) However, to the contrary, the testimony cited herein, reveals that this travel expense was paid to all employees, regardless of whether or not they actually used their own transportation to come and go from work and that said expense was not based upon actual miles traveled. Furthermore, the evidence clearly establishes that while Decedent worked for Bechtel, the *only* site of his employment was Limerick, Pennsylvania.

In the case of *Peer v. Workmen's Compensation Appeal Board (B & W Construction)*, 94 Pa.Commonwealth Ct. 540, 503 A.2d 1096 (1986), we dealt with a factually similar matter to the one at bar, where benefits were sought by an employee who claimed that his employment contract included transportation to and from work and that he was, therefore, within the scope of his employment when he was involved in an automo-

bile accident while driving to work. In affirming the Board's reversal of the referee's grant of benefits, we agreed with the Board's determination that the referee, in awarding benefits, improperly relied upon the fact that the employer and the claimant's union had contracted to provide a travel allowance, and, on this basis determined that claimant's contract of employment included transportation to and from work. In *Peer,* we stated:

> [A]lthough the Board recognized the collective bargaining agreement between Employer and Claimant's union provided for a travel allowance, the Board properly rejected the referee's legal conclusion that such an agreement, in and of itself, places Claimant's travels to and from work within the course of his employment. *As the record shows, the agreement specified that car fare was to be paid to union members according to a formula which utilized the distance between an employee's place of employment and the City Hall of Pittsburgh, without consideration as to the actual distance union members would travel from their homes to their place of employment. Although this provision of the agreement provided extra compensation to union members, it neither required Employer to provide transportation, nor did it allow Employer to exercise control over the means of transportation chosen by individual employees.* Moreover, the allowance did not further the business of Employer. Accordingly, the Board correctly determined that the agreement did not bring Claimant's transportation to and from work within the scope of his employment.

*Peer,* 94 Pa.Commonwealth Ct. at 544, 503 A.2d at 1098. (Emphasis added).

Here, as noted, the record reveals that all union employees received a $5.00 per diem travel allowance from Bechtel regardless of either the distance they traveled to work from their homes or whether or not they drove. In fact, the record demonstrates that most employees car-pooled to their job site.

Accordingly, as we find that the Board went beyond its scope of review and disregarded the referee's findings which were supported by substantial evidence, as well as committed

an error of law in construing Bechtel's payment of a $5.00 per diem travel expense to all employees as evidence that its employment contracts included transportation, we will vacate the Board's orders of January 5, 1994 and September 28, 1990 and reinstate and affirm the referee's order of January 10, 1989 dismissing Claimant's petition for benefits.

## ORDER

AND NOW, this 22nd day of September, 1994, it is hereby ORDERED as follows:

1. The orders of the Workmen's Compensation Appeal Board dated January 5, 1994 and September 28, 1990 are vacated.

2. The referee's decision and order of January 10, 1989 dismissing the fatal claim petition of Carolyn G. Postlethwait is reinstated and affirmed.