**EMPLOYERS MUTUAL CASUALTY CO., Appellant**

v.

**BOILER ERECTION AND REPAIR CO., Inc., Kenneth Klinger and, Kenneth Kerr.**

**Kenneth R. Kerr, Appellant**

v.

**Boiler Erection and Repair Company, Inc. and Kenneth James Klinger.**

Superior Court of Pennsylvania.

Argued June 10, 2008.
Filed Dec. 12, 2008.
Reargument Denied Feb. 17, 2009.

8. We also credit Appellee's argument, as discussed above, distinguishing the *McGuire* and *Harris* decisions.

384

Anthony R. Sherr, Blue Bell, for Employers Mutual.

James M.P. Turner, Philadelphia, for Kerr.

David A. Baun, Doylestown and Francis T. McDevitt, Marlton, NJ, for Boiler Erection.

BEFORE: FORD ELLIOTT, P.J., ALLEN and KELLY, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 These consolidated appeals stem from a single-vehicle accident that occurred on August 30, 2001, on Interstate 95 outside of Baltimore, Maryland. Kenneth James Klinger ("Klinger") was the driver of the vehicle, a pick-up truck owned by Boiler Erection and Repair Co., Inc. ("Boiler Erection"). Both Klinger and Kenneth R. Kerr ("Kerr"), the passenger, were employees of Boiler Erection and sustained serious injuries as a result of the accident. At the time of the accident, Klinger and Kerr were returning to Pennsylvania from a job in Baltimore. Before leaving Baltimore, they had stopped at a seafood restaurant for dinner where both consumed alcoholic beverages.

¶ 2 In addition to filing a claim petition for workers' compensation benefits, Kerr brought a third-party tort claim in Philadelphia County against Klinger and Boiler Erection. Employers Mutual Casualty Company ("EMC"), Boiler Erection's insurer, filed a declaratory judgment action in Montgomery County, asking the court to declare that EMC was not obligated to defend or provide coverage to any party as a result of Kerr's injuries.

¶ 3 By order entered July 28, 2005, the Honorable Richard J. Hodgson granted in part and denied in part EMC's motion for summary judgment. The motion was granted only to the extent that the Workers' Compensation Exclusion in the policy applied to preclude duplication of recovery damages that may have been paid under any workers' compensation and did not serve to limit liability damages. The remainder of EMC's motion for summary judgment was denied.[1]

¶ 4 EMC timely filed a notice of appeal, and Boiler Erection filed a motion to quash the appeal as interlocutory. On December 5, 2006, a divided panel of this court remanded the case for further proceedings. We instructed the trial court to specifically address several questions, including "Whether the underlying personal injury action of Kerr was brought and/or is governed by the laws of Pennsylvania or Maryland"; "Whether appellee Klinger was operating the employer's vehicle within the scope of his employment for purposes of eligibility for workers' compensation benefits"; and "Whether the order of July 28, 2005, that is currently under appeal involves a controlling question of law as to which there is a substantial ground for difference of opinion such that 'an immediate appeal from the order may materially advance the ultimate termination of the matter,' pursuant to 42 Pa.C.S. § 702(b)?"[2] *Employers Mutual Casualty*

---

1. Kerr has claimed and been awarded workers' compensation benefits as a result of his injuries. Klinger filed a claim for benefits but later withdrew it.

2. **(b) Interlocutory appeals by permission.—** When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a

controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.

42 Pa.C.S.A. § 702(b).

*Co. v. Boiler Erection and Repair Co., Inc., Kenneth Klinger and Kenneth Kerr,* No. 2328 EDA 2005, unpublished memorandum at 4–5, 918 A.2d 794 (Pa.Super. filed December 5, 2006).[3]

¶ 5 On January 23, 2007, Judge Hodgson filed a supplemental opinion. In response to the questions posed by this court, the trial court determined, *inter alia,* that Pennsylvania law applied and that for purposes of eligibility for workers' compensation benefits, Klinger's consumption of alcohol prior to driving the company vehicle took him outside the scope of his employment, relying on *Atlantic States, supra.* The trial court also determined that an immediate appeal from the trial court's order would advance the ultimate termination of the matter. The trial court requested that an appeal be permitted from its interlocutory order dated July 28, 2005.[4]

¶ 6 Turning to the appeal at No. 1582 EDA 2007, Kerr appeals the order entered May 30, 2007, granting Klinger's motion *in limine.* Following an evidentiary hearing, the Honorable Frederica A. Massiah–Jackson determined that Kerr was barred from pursuing the tort litigation by the exclusivity provision of the Workers' Compensation Act. The court concluded that Kling-

er was acting within the course and scope of his employment at the time of the motor vehicle accident. As stated *supra,* summary judgment was granted in favor of Boiler Erection on July 27, 2005, and appellant Kerr does not contest that ruling.

¶ 7 Timely notice of appeal was filed on June 1, 2007. Kerr was not ordered to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On August 7, 2007, Judge Massiah–Jackson filed a Rule 1925(a) opinion, relying on her findings of fact and conclusions of law in support of the order granting Klinger's motion *in limine.* On September 25, 2007, this court consolidated the two appeals *sua sponte*

¶ 8 We address the Philadelphia appeal first, because if we agree with Judge Massiah–Jackson's conclusion that despite having consumed alcohol prior to the accident, Klinger was acting within the scope of his employment and Kerr's third-party claim is statutorily barred by the Workers' Compensation Act ("the Act"), then the appeal at No. 2328 EDA 2005, regarding the coverage issue, is easily decided. Kerr has raised the following issues for this court's review:

---

**3.** Judge Lally–Green filed a concurring and dissenting statement. In her view, the trial judge's entry of summary judgment constituted a final, appealable order. Judge Lally–Green opined that the case was controlled by this court's ruling in *Atlantic States Ins. Co. v. Northeast Networking Sys., Inc.,* 893 A.2d 741 (Pa.Super.2006), *appeal denied,* 590 Pa. 654, 911 A.2d 932 (2006) (to be discussed in detail *infra* ), which examined the same policy exclusions at issue in appellant's case. Judge Lally–Green stated that in light of our analysis in *Atlantic States,* EMC can prevail in the declaratory judgment action if, and only if, Klinger was within the scope of his employment at the time of the accident. Therefore, she would remand for the trial court to decide that single question. Judge Lally–Green further disagreed that the outcome of the declar-

atory judgment action depended on whether Pennsylvania or Maryland law governed. Since the policy excludes coverage where coverage is available from the insured's workers' compensation carrier, the trial court's finding as to whether Klinger acted within the scope of his employment at the time of the accident would dispose of the coverage issue, regardless of whether Pennsylvania or Maryland law applies to the underlying tort claim.

**4.** Judge Hodgson also noted that as summary judgment had been granted in favor of Boiler Erection as to Kerr's third-party tort claim, the issue as to whether coverage extends to Boiler Erection is moot. (Trial court supplemental opinion, 1/23/07 at 7.)

1. Whether the trial court erroneously determined that Appellee, Klinger, was acting within the course and scope of his employment for his employer, Boiler Erection and Repair Co., Inc., on August 30, 2001, when he caused a single vehicle collision, effectively bar[r]ing his co-employee and passenger, Appellant, Kenneth R. Kerr, from pursuing his tort litigation against said Appellee, even though Klinger had violated the law and company policies by consuming alcohol prior to his operating said vehicle?

2. Whether the trial court committed error when it refused to apply the doctrine of collateral estoppel to Appellee, Klinger's claim that he was within the course and scope of his employment at the time of the August 30, 2001, accident, when said issue had already been decided by the Honorable Richard J. Hodgson of the Montgomery County Court of Common Pleas when Judge Hodgson decided same in a prior related matter?

3. Whether the trial court erred in concluding that Defendant Klinger violated the law by consuming alcohol prior to operating his employer's vehicle on August 30, 2001, but that his violation of the law was not the cause of the within accident?

Kerr's brief at 4 (emphasis in original).

 ¶ 9 We will examine these issues *seriatim.* First, we set out the relevant standard of review:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

*Diener Brick Co. v. Mastro Masonry Contractor,* 885 A.2d 1034, 1038 (Pa.Super.2005), quoting *Amerikohl Mining Co. v. Peoples Natural Gas Co.,* 860 A.2d 547, 549–550 (Pa.Super.2004), *appeal denied,* 583 Pa. 667, 876 A.2d 392 (2005) (citations omitted).

¶ 10 The parties stipulated that Pennsylvania law controls and that Kerr and Klinger were co-employees of Boiler Erection. (Trial court opinion, 5/30/07 at 1.) The parties also agreed that Judge Massiah–Jackson, sitting without a jury, could make the determination of the scope of Klinger's employment. (*Id.*) Additionally, the parties acknowledged that if Klinger was acting within the scope of his employment, Kerr's suit is barred by the Act. (*Id.* at 2.)

¶ 11 The trial court, following an evidentiary hearing held May 24, 2007, made the following findings of fact:

1. On August 30, 2001, Kenneth J. Klinger and Kenneth R. Kerr were sent by their employer, Boiler Erection and Repair Co., Inc. to make repairs to a boiler in Baltimore, Maryland.

2. Mr. Klinger was one of two field service employees who was permitted to drive the company truck to his home each day. This enabled him to leave early in the morning so that he could arrive at the customer's location 'as close to 7:00 a.m. as possible[.]' He was a Mechanic Foreman.

3. On August 30, 2001, Mr. Klinger met Mr. Kerr, the Field Technician, at a location in Chester, Pennsylvania.

4. In the early morning of August 30th, Mr. Kerr left his brother's home and drove his truck to Chester where he parked it at a parking lot. This was the 'rendezvous point' where Mr. Klinger met Mr. Kerr. Mr. Kerr was the passenger on the trip to Baltimore.

5. At some point after lunch, the men determined that they did not have certain parts to complete the work on the boiler. Mr. Klinger spoke by telephone to his boss, John Carey, Jr., at about 1:30 p.m. It was agreed that Mr. Klinger and Mr. Kerr would leave Baltimore, Mr. Klinger would get the parts in Pennsylvania, and then the two men would return to Baltimore the next morning.

6. Mr. Carey and Mr. Klinger did not discuss whether Mr. Klinger and Mr. Kerr would stop for dinner on the way back to Pennsylvania.

7. The two men worked more than four hours that day and were paid for eight hours pursuant to union rules. They were no longer 'on the clock' when they left the customer's work site and stopped for dinner at a seafood restaurant in Baltimore.

8. At the restaurant, Mr. Kerr consumed three beers. Mr. Kerr was not able to state the number of beers consumed by Mr. Klinger. They were separated for a while as they both walked around after dinner.

9. Mr. Klinger drove the company truck Northbound on I–95 en route to Chester where Mr. Kerr planned to retrieve his truck. Mr. Kerr fell asleep on the ride.

10. Mr. Klinger was involved in a serious one vehicle accident. Both men sustained life threatening and permanent injuries, including significant head injuries. Neither man is able to recount how the accident occurred.

11. There was no consistent or credible evidence to establish that Mr. Klinger knew or should have known of a company policy which states, 'Gambling or intoxicating liquor or drugs in any form are forbidden at any time.'

12. There was no evidence to establish that Mr. Klinger knew or should have known that he was expected to ask for permission to eat dinner before he traveled back to Pennsylvania.

13. There was credible evidence that both men consumed alcohol at dinner, and that Mr. Klinger was driving the company truck shortly after the meal, en route to Chester, when the accident occurred.

Trial court opinion, 5/30/07 at 2–4.

¶ 12 As stated above, a workers' compensation referee determined that Kerr was acting within the course and scope of his employment while he was a passenger in the company truck being driven by Klinger. (*Id.* at 4.) The referee's decision was upheld by the Workers' Compensation Appeal Board ("WCAB"). (Klinger's brief at 4.) Klinger also filed a petition for benefits, but withdrew it before any determination was made concerning his eligibility to receive workers' compensation benefits. (*Id.*) Therefore, there has not been an adjudication by a workers' compensation referee to determine whether Klinger was also acting within the course and scope of

his employment. (Trial court opinion, 5/30/07 at 4.)

¶ 13 Judge Massiah–Jackson determined that as Klinger was driving back to Pennsylvania at the direction of Boiler Erection to pick up equipment to complete the project in Baltimore, and also to return Kerr to the rendezvous point, Klinger was acting within the course and scope of his employment at the time of the accident. Judge Massiah–Jackson acknowledged Judge Hodgson's contrary ruling and reliance on *Atlantic States, supra;* however, Judge Massiah–Jackson ultimately rejected the Montgomery County court's interpretation of *Atlantic States* as holding that consumption of alcohol by an employee before driving a company vehicle, in violation of company policy, is *per se* conduct outside the scope of employment. (*Id.* at 5–6.) Judge Massiah–Jackson concluded that although Klinger and Kerr consumed alcohol at dinner in violation of company policy, and Klinger was in violation of the law when he consumed alcohol and then drove the company truck, this was not *per se* conduct outside the scope of employment. The trial court also found that there was no evidence presented in support of a conclusion that the injuries would not have occurred but for Klinger's consumption of alcohol. (*Id.* at 6.) Judge Massiah–Jackson determined that Klinger's conduct at the time of the accident in driving back to Pennsylvania was in furtherance of the employer's business, was work-related, and was undertaken at the specific request and expectation of Mr. Carey. (*Id.* at 8 ¶ 18.) Therefore, Kerr was barred from pursuing the tort litigation, and the Act provides the exclusive remedy for relief. (*Id.* at 8.)

¶ 14 Section 72 of the Act, 77 P.S. § 1 *et seq.*, provides:

If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, except for intentional wrong.

Thus, where an employee's injury is compensable under the Act, Section 72 immunizes fellow employees from liability for their negligence. *Albright v. Fagan,* 448 Pa.Super. 395, 671 A.2d 760, 762 (1996). "[W]orker's compensation benefits are the sole and exclusive remedy available to employees injured in a motor vehicle accident in the course and scope of their employment." *Id.,* quoting *Ducjai v. Dennis,* 431 Pa.Super. 366, 636 A.2d 1130, 1131 (1994) (*en banc* ), *affirmed,* 540 Pa. 103, 656 A.2d 102 (1995).[5]

Whether a Claimant was acting within the scope of his employment at the time of his injury is a question of law to be determined on the basis of the findings of fact. *William F. Rittner Co. v. Workmen's Compensation Appeal Board (Rittner),* 76 Pa.Commonwealth Ct. 596, 464 A.2d 675 (1983). Generally, injuries received by an employee travelling to or from work are not compensable. *Wolfe v. Workmen's Compensation Appeal Board,* 65 Pa.Commonwealth Ct. 97, 442 A.2d 12 (1982). There are, however, four exceptions to this rule, namely, (1) the employment contract included transportation to and from work; (2) the claimant has no fixed place of work; (3) the claimant is on special assignment for the employer; or (4) special circumstances are such that the claimant was furthering the business of the employer. *Jones v. Workmen's Compensation Appeal Board (Rehabilitation Coordinators, Inc.),* 88 Pa.Commonwealth Ct. 426,

---

**5.** Kerr does not allege that the accident was the result of an intentional act.

489 A.2d 1006 (1985). Where an employee falls within one of these exceptions, he continues to be within the scope of employment although traveling to or from his employment.

*Bechtel Power Corp. v. W.C.A.B. (Postlethwait)*, 167 Pa.Cmwlth. 544, 648 A.2d 1266, 1271 (1994), *appeal denied*, 540 Pa. 585, 655 A.2d 516 (1995).[6]

¶ 15 In this case, at least two of the exceptions delineated above would apply: Klinger was on special assignment for his employer, *i.e.*, traveling back to Pennsylvania to pick up necessary parts to complete the repair project in Baltimore; and he was furthering the business of the employer. In addition, Klinger had to drive Kerr back to his vehicle in Chester, Pennsylvania. Kerr was not authorized to drive the company truck. The second exception to the coming and going rule, that the claimant has no fixed place of work, could also apply, insofar as Mr. Carey testified that Klinger would typically go directly to a job without stopping at Boiler Erection's location in Ambler, Pennsylvania:

Q. And why was it Mr. Klinger was allowed to have his vehicle used to bring back and forth to work?

A. Convenience, in that they could leave directly from their home to the job site and not have to drive to Ambler for any particular reason. Upon occasion they had to, if they would pick up materials or if the actual Ambler facility was used as a point of rendezvous, but typically that's not the case.

THE COURT: I have a question. Was Mr. Klinger in Downingtown or Northington?

THE WITNESS: Downingtown.

BY Mr. MCDEVITT:

Q. Now, what if there was an assignment let's say in Baltimore, Maryland, with a client or customer, what was expected with respect to Mr. Klinger? Would he come to Ambler or would he go right to the customer?

A. Go right to the customer.

Q. Had Mr. Klinger performed that type of service, traveling right from his home to a customer's location, before August 30th, of 2001?

A. Yes.

Q. Any idea how often he had done that?

A. Daily.

Notes of testimony, 5/24/07 at 31–32.

¶ 16 Kerr argues by virtue of the fact that Klinger had consumed alcoholic beverages prior to driving the company vehicle, in violation of company policy, Klinger was outside the course and scope

---

**6.** Klinger argues that because he and Kerr were "in the *same employ*," *i.e.*, they both worked for Boiler Erection, Kerr's suit is barred by the Act regardless of whether Klinger was in the course and scope of his employment at the time of the accident. (Klinger's brief at 9–10.) We rejected the same argument in *Bell v. Kater*, 943 A.2d 293, 297–298 (Pa.Super.2008), *appeal denied*, —— Pa. ——, 960 A.2d 454 (2008):

Contrary to Kater's assumptions here, the mere fact that both parties held positions of employment with the same employer at the time of the accident is not sufficient to show that they were in the 'same employ' at the time of the accident. 'Rather, the act or omission must occur while both employees are in the performance of their duties as employees.' In order to establish immunity under the Workers' Compensation Act, the defendant is required to establish that her act or omission occurred while she was in the 'same employ' as the plaintiff, that is, in the course of her performance of duties for the employer.

*Id.*, quoting *Fern v. Ussler*, 428 Pa.Super. 210, 630 A.2d 896, 898–899 (1993) (emphasis deleted).

of his employment at the time of the accident. We disagree.

¶ 17 In *Oakes v. W.C.A.B. (Pennsylvania Electric Co.)*, 79 Pa.Cmwlth. 454, 469 A.2d 723 (1984), the decedent, a line foreman for the electric company, was called to deal with a power outage. The outage was corrected by 9:00 a.m., and the decedent then engaged in some personal shopping, stopping also at some bars where he consumed alcoholic beverages. *Id.* at 724. He remained "on call" during this time. *Id.* At 4:00 p.m., on his way home, the decedent was killed in an automobile accident. The workers' compensation referee determined that the decedent's state of intoxication was not the "cause" of the accident; however, he also found that the decedent was not in the course of his employment at time of death, and denied benefits to the decedent's widow and children on that basis. *Id.* at 724–725.

¶ 18 On appeal from the WCAB's order affirming the decision of the referee, the Commonwealth Court reversed, holding, *inter alia,* that the decedent was in the course of his employment at the time of the fatal accident. Although the referee found that the decedent made at least six stops at various bars where he consumed alcoholic beverages and that his blood alcohol content ("BAC") of 285 milligrams of ethanol at time of death indicated a severe degree of intoxication, the *Oakes* court decided that he was in the course of employment where he was killed while completing his employer's task on which he had embarked earlier that day and the homeward trip was a necessary part of his employment. *Id.* at 725–726. The court noted that one who is employed to travel and

who is provided with transportation in order to carry out such duty has a scope of employment that is necessarily broader than that of an ordinary employee: "Such employees, while using the employer's transportation to go to and from duty assignments, remain in the course of their employment during such travel." *Id.* at 725 (citations omitted).

¶ 19 The *Oakes* court also rejected the employer's contention that the decedent violated its policy prohibiting consumption of alcohol during working hours, as well as violating the law by driving under the influence, noting that the referee specifically found that the decedent's intoxication was not the cause of the accident. *Id.* at 726–727. *See also Hopwood v. City of Pittsburgh,* 152 Pa.Super. 398, 33 A.2d 658 (1943) (although hospital orderly violated definite instructions and hospital rules by drinking while on duty, he was not necessarily barred from compensation; "Wilful misconduct in itself does not work a forfeiture of the right to compensation." The accidents occurred in the course of employment, and the employer did not meet its burden of proving that the cause of the accident was the claimant's drinking in violation of positive orders); *Ginther v. J.P. Graham Transfer Co., et al.,* 348 Pa. 60, 33 A.2d 923 (1943) (fact that the decedent stopped while making a delivery to imbibe alcoholic beverages at a roadhouse, in violation of employer's specific instructions, did not take the decedent outside the course and scope of employment); [7] *Elinsky v. W.C.A.B. (Gulf Research & Development Co.),* 116 Pa.Cmwlth. 51, 540 A.2d 1019, 1020 (1988) (following an all-day seminar, decedent was observed drinking alcoholic beverages at a social hour sponsored

---

7. The court in *Ginther* did go on to hold, however, that the decedent truck driver's act of giving the wheel to a part-time, off-duty fellow employee, who had also been drinking that evening, did constitute an abandonment of the duty entrusted to him and, therefore, decedent was not in the course of his employment within the meaning of the Act at the time of the fatal accident. *Id.* at 62–63, 33 A.2d at 924.

by his employer, and decedent's BAC was .291%; however, referee's finding that the accident was caused by decedent's ordinary negligence rather than driving while intoxicated was supported by the record and claimant/widow established her right to fatal claim benefits by proving the accident arose in the course of employment and was related thereto), citing *Oakes, supra*.

¶ 20 Kerr relies on *Atlantic States Insurance Co. v. Northeast Networking Systems, Inc.*, 893 A.2d 741 (Pa.Super.2006), *appeal denied*, 590 Pa. 654, 911 A.2d 932 (2006), which we find to be distinguishable. As Judge Lally–Green noted in dissent in the EMC appeal, discussed *supra*, *Atlantic States* interpreted policy exclusions identical to those at issue here. However, Kerr relies on *Atlantic States* for the proposition that an employee who drinks alcohol and then drives a car in violation of company policy is necessarily outside the course and scope of employment for purposes of the Act's co-employee immunity provision. We do not believe *Atlantic States* stands for such a principle; and indeed, it would seem to run contrary to established precedent.

¶ 21 In *Atlantic States*, Clinton Boyd ("Boyd") and Charles Fornicoia ("Fornicoia"), both employees of Northeast, were involved in a single-vehicle accident resulting in serious injuries to Fornicoia. Boyd, the driver of the company-owned vehicle, had consumed alcohol at dinner prior to the accident and was subsequently charged with DUI. Besides the declaratory judgment action, the accident gave rise to two other types of proceedings, Fornicoia and Boyd's workers' compensation claims against Northeast and a tort action in Florida by Fornicoia against both Boyd and Northeast.

¶ 22 A workers' compensation referee decided Fornicoia was in the scope of Northeast's business when he was injured, although he had also imbibed alcohol, apparently because he was a passenger at the time of the accident. A different workers' compensation referee decided that Boyd, the driver, was not in the scope of Northeast's business at the time of the accident, giving as the reason for the decision the fact that Boyd had consumed alcohol prior to driving the car. Therefore, Fornicoia was granted workers' compensation benefits and Boyd was denied benefits. The Florida court, applying Pennsylvania law, ruled that the workers' compensation bar did not apply and that Boyd's liability was not limited by workers' compensation laws.

¶ 23 The trial court in the declaratory judgment action determined that Boyd, who was undisputedly a permissive user of the vehicle at the time of the accident and as such was an "insured" under the business auto policy issued by Atlantic States, was nonetheless acting outside of his employment; and therefore, his allegedly tortious act was not the act of Northeast. Since Boyd was acting on his own behalf, the trial court held that his conduct was not that of a "fellow employee," and therefore, the fellow employee exclusion did not apply to exclude coverage. *Atlantic States v. Northeast Networking Systems, Inc.*, 69 Pa. D. & C. 4th 415, 420–421 (Allegheny Co.2004), *reversed*, 893 A.2d 741 (Pa.Super.2006), *appeal denied*, 590 Pa. 654, 911 A.2d 932 (2006). In so holding, the trial court considered itself bound by the workers' compensation referee's conclusion that Boyd was not within the scope of his employment, and also by the Florida court's ruling. *Id.*

¶ 24 Atlantic States appealed, and a unanimous panel of this court reversed, holding that because Fornicoia was acting within the course and scope of *his* employment during the time of the accident, the

fellow employee exclusion, which excludes coverage for " 'Bodily injury' to any fellow employee of the 'insured' arising out of and in the course of the fellow employee's employment," acted to bar insurance coverage of Boyd by Atlantic States. *Atlantic States, supra* 893 A.2d at 748–749. Boyd, although previously determined to have been acting outside the course of his employment at the time of the accident, was a permissive user of the vehicle and therefore an "insured" under the policy. *Id.* at 748. Because Fornicoia's injuries arose out of and in the course of his employment and were a result of the insured's (Boyd's) actions, appellant Atlantic States was not responsible for defending Boyd in the Florida litigation and was not responsible for paying any verdict in favor of Fornicoia and against Boyd. *Id.* at 749.

¶ 25 Prior to addressing the fellow employee exclusion, the court in *Atlantic States* examined the workers' compensation exclusion and agreed with the trial court that it did not apply because the workers' compensation referee determined that, under workers' compensation law, Boyd was outside the scope of his employment due to his alcohol consumption at dinner. *Id.* at 746. Boyd was liable to Fornicoia in tort and not liable under workers' compensation law, and therefore, the workers' compensation exclusion, which did not exclude any obligation for which Boyd or Northeast may be held liable under ordinary tort law, did not apply. *Id.* The court cited testimony from the workers' compensation hearing to the effect that Boyd drove the company car after consuming alcohol in violation of Northeast's company policy; Boyd had attended a driving safety and procedures meeting which outlined Northeast's policy against driving the company vehicle after consuming alcohol; and Boyd's signature was on the meeting's sign-in sheet. *Id.* at 746–747.

¶ 26 We disagree with Kerr that *Atlantic States* controls the outcome of this case. It is clear from a close reading of Judge Popovich's opinion that the court was relying on the fact that a workers' compensation referee had already decided that Boyd was outside the course and scope of his employment for purposes of collecting workers' compensation benefits. In the case *sub judice,* Klinger withdrew his claim for benefits and there has been no decision by a workers' compensation judge or referee. The trial court in *Atlantic States* similarly relied on the referee's determination as well as the Florida court's reasoning, which it stated "is not obviously incorrect and therefore this court has no basis in justice to disregard it." *Atlantic States,* 69 Pa. D. & C. 4th at 421.

¶ 27 There are also several factual differences between this case and *Atlantic States:* Boyd was cited for DUI, which Klinger was not; Boyd and Fornicoia were sent by Northeast to Richmond, Virginia, for an extended time and it was unclear where they were going at the time of the accident, whereas Klinger and Kerr were on their way back to Pennsylvania at the explicit direction of their employer and in furtherance of the employer's business; and there was testimony that Boyd had attended a driving safety meeting which specifically outlined Northeast's policy against driving the company vehicle after consuming alcohol. In the instant case, the record supports the trial court's finding that there was no evidence put forth that Klinger knew or should have known of such a policy. (Trial court opinion, 5/30/07 at 3 ¶ 11.) Mr. Carey, vice-president of Boiler Erection, testified that the policy was verbal in nature and never explained to Klinger, at least as far as he was aware. (Notes of testimony, 5/24/07 at 55–56, 59–60.) For these reasons, we do not consider ourselves bound by our prior holding in

*Atlantic States.* In addition, to interpret *Atlantic States* as providing a *per se* rule that drinking alcohol in violation of company policy takes an employee outside the scope of his or her employment would run afoul of firmly established precedent and cannot have been the intent of the panel in that case.

¶ 28 We agree with Judge Massiah–Jackson that both Klinger and Kerr were operating within the scope of their employment when they left Baltimore that evening. As the trial court states,

> This Court concludes that when Mr. Klinger drove out of the City of Baltimore onto I–95 North to return to Pennsylvania, he was in the scope of employment of Boiler Erection. The company maintained control over his work. The company expected him to return to Pennsylvania that evening. The company expected him to return Mr. Kerr to the rendezvous point. The company expected him to pick up equipment to complete the project in Baltimore.

Trial court opinion, 5/30/07 at 7 ¶ 16.

¶ 29 The trial court found that it was reasonable for Kerr and Klinger to stop for dinner prior to departing Baltimore, and that at most, such diversion could be considered a temporary detour or departure from the scope of employment. (*Id.* at 6–7.) We agree. "It is true that an employe who makes a detour for his own purposes may re-enter the course of his employment." *Dandy v. Glaze,* 197 Pa.Super. 218, 177 A.2d 157, 159 (1962) (citations omitted). *See also Beaver and Casey, Inc. v. W.C.A.B. (Soliday),* 661 A.2d 40, 42 n. 8 (Pa.Cmwlth.1995) ("For traveling employees, temporary departures from the work routine to administer to personal comforts, including authorized breaks for lunch, do not break the continuity of the employee's course of employment.") (citation omitted). At the time the accident, Klinger was within the scope of his employment.[8]

¶ 30 Kerr states that in its answer to Klinger's claim petition, Boiler Erection averred that Klinger had abandoned the course and scope of his employment by consuming alcohol prior to driving the company vehicle. (Kerr's brief at 30.) As Klinger argues, Boiler Erection is no longer a party to this lawsuit, and any averments in its answer to Klinger's claim petition in workers' compensation proceedings would not be binding as to Klinger. (Klinger's brief at 27.) In addition, we note that at the June 17, 2005 hearing on the motion for summary judgment, counsel for Boiler Erection admitted that Klinger was an employee of Boiler Erection acting in the course and scope of his employment. (Notes of testimony, 6/17/05 at 61.)

¶ 31 Turning to Kerr's second argument on appeal, he contends that the parties were bound by Judge Hodgson's prior ruling in Montgomery County that Klinger was outside the course and scope of his employment when the accident occurred. Kerr argues that the doctrine of collateral estoppel applied to bar Klinger from relitigating the issue of whether or not he was in the scope of employment.

¶ 32 We disagree that collateral estoppel applied because the issue decided in the prior declaratory judgment action was not identical to the one presented to Judge Massiah–Jackson in the third-party tort claim.[9] Judge Hodgson was

---

8. Mr. Carey testified that there was no policy forbidding traveling employees from stopping to eat. (Notes of testimony, 5/24/07 at 25–26.)

9. Under the doctrine of collateral estoppel, relitigation of an issue of fact or law determined in a prior proceeding is precluded if: (1) the issue decided in the prior case is identical to the one presented in the later

asked by this court to decide whether Klinger was within the scope of his employment for purposes of eligibility for workers' compensation benefits, to help determine the coverage issue. The parties agreed that Judge Massiah–Jackson would decide whether Klinger was within the scope of his employment for purposes of the Act's exclusivity provision, and the Philadelphia court held an evidentiary hearing on that particular issue. In fact, Judge Hodgson specifically noted that "we do not make any finding in regards to whether Kerr's specific negligence suit against Klinger is prohibited under the Pennsylvania Act." (Supplemental opinion, 1/23/07 at 4 n. 1.) Similarly, in *Atlantic States*, Fornicoia argued that the appellant insurer was collaterally estopped from asserting Boyd was within the course and scope of his employment because the decisions of the Florida court and the workers' compensation referee were binding on appellant. *Atlantic States, supra* at 745. This court disagreed, determining that the issues were not identical.

The issue presented before the workers' compensation referee was whether Boyd was acting within the scope and course of his employment while driving the

company car and the workers' compensation referee determined that he was not. *See* Workers' compensation opinion, 5/23/02, at 5. Similarly, the decision of the Florida court that Boyd was not acting within the course and scope of his employment is not binding upon Appellant because it is not the same issue being litigated here. *See* Florida trial court opinion, 12/10/03 at 4. At issue here is whether Boyd was a permissive user and, therefore, an 'insured' under the insurance policy.

*Id.* at 746.

¶ 33 As in *Atlantic States*, we find that collateral estoppel does not apply because although both cases addressed the issue of whether Klinger was outside the scope of his employment, they were for different purposes. One concerned insurance coverage under Boiler Erection's auto policy, the other whether Klinger was immune from tort liability under the Act. It is also notable that Judge Hodgson only decided the scope of employment issue at our direction and did not hold an evidentiary hearing. Therefore, it is questionable whether Klinger had a full and fair opportunity to litigate the issue.[10]

action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.
*Erisco Industries, Inc. v. W.C.A.B. (Luvine),* 955 A.2d 1065, 1068–1069 (Pa.Cmwlth.2008), citing *Office of Disciplinary Counsel v. Kiesewetter,* 585 Pa. 477, 889 A.2d 47 (2005).

10. To the extent Kerr seems to be arguing that the **trial court** was somehow bound by Judge Hodgson's decision in the declaratory judgment action, Kerr is apparently confusing the collateral estoppel doctrine with the coor-

dinate jurisdiction rule, which is not applicable here since it applies only to transferee/transferor courts. The collateral estoppel doctrine, in turn, applies only to **parties** to the litigation and would not have any binding effect on the court. And, in fact, counsel for Kerr conceded at the evidentiary hearing before Judge Massiah–Jackson that the prior determination by the Montgomery County court in the declaratory judgment action was not binding:

MR. TURNER: [ ] And Judge Hodgson, I have his opinion here, he had his factual determination, and his factual determination was that Mr. Klinger was outside the scope of his employment because he had consumed alcohol. Now, your Honor, that's not a workmen's comp case.
THE COURT: I understand.

¶ 34 We now turn to Kerr's third and final issue on appeal, that the trial court erred in concluding that Klinger's consumption of alcohol was not the cause of the accident. The trial court found:

> When Mr. Klinger consumed alcohol and then drove the company truck he violated the law. This Court cannot conclude that violation of the law was per se conduct outside the scope of employment. Further, there was no evidence presented for this Court to conclude that the injuries would not have occurred but for Mr. Klinger's consumption of alcohol.

Trial court opinion, 5/30/07 at 6 ¶ 11. From our reading of his brief on appeal, Kerr appears to be arguing that 1) the trial court's conclusion that Klinger's alcohol consumption, ostensibly in violation of both company policy and the law, was not the cause in fact of the accident was not supported by the record; and 2) if the accident was caused by Klinger's intoxication, then Klinger was outside the course and scope of his employment. We disagree with both assertions.

¶ 35 Section 431 of the Act provides, in relevant part:

> Every employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence ... Provided, That no compensation shall be paid when the injury or death is intentionally self inflicted, or is caused by the employe's violation of law, including, but not limited to, the illegal use of drugs, but the burden of proof of such fact shall be upon the employer.... In cases where the injury or death is caused by intoxication, no compensation shall be paid if the injury or death would not have occurred but for the employe's intoxication, but the burden of proof of such fact shall be upon the employer.

77 P.S. § 431.

> An employer does not meet its burden of proof merely by showing that a claimant committed a violation of law. The employer is required to prove, by more than a preponderance of the evidence, that a causal connection exists between a violation of law and the claimant's injuries. Accordingly, in cases where an employee is killed or injured when driving while intoxicated, the employer must establish that the employee's intoxication is the cause of the accident; otherwise, the claimant is entitled to benefits.

*Graves v. W.C.A.B. (Newman)*, 668 A.2d 606, 608–609 (Pa.Cmwlth.1995), citing *Oakes, supra; Kovalchick Salvage Co. v. W.C.A.B. (St.Clair)*, 102 Pa.Cmwlth.562, 519 A.2d 543 (1986) (employee who was driving while legally intoxicated with .26% BAC granted benefits because employer did not prove that intoxication caused claimant's accident) (additional citation omitted).

¶ 36 The trial court's determination that Kerr failed to prove the accident was caused by Klinger's intoxication is amply supported by the record. Klinger sustained serious and permanent brain injuries as a result of the accident and was

MR. TURNER: It's a Dec Action. I understand it's a Dec Action, but there is a finding. Are you bound by that finding? No. And I'm not going to stand here and argue that you are.

THE COURT: Thank you. That's why I wanted an evidentiary hearing.

MR. TURNER: I would ask that you consider that strongly, obviously.

Notes of testimony, 5/24/07 at 86–87. At any rate, certainly it cannot be argued that **this court** is in any way bound by Judge Hodgson's conclusion, and we would reject it for the reasons discussed above.

unable to testify. (Klinger's brief at 4.) Kerr was sleeping at the time of the accident and has no memory of it. (Notes of testimony, 5/24/07 at 62, 68.) Kerr also sustained head injuries in the accident. (*Id.* at 61.) Kerr did not present any eyewitnesses, experts, or accident reconstructionists. The Maryland State Police report was not admitted into evidence. Kerr relies on the toxicology report which indicates a BAC of approximately .17%; however, this report was also not admitted into evidence and counsel for Klinger refused to stipulate to it without an expert witness. (*Id.* at 79–80.) In addition, the fact Klinger was over the legal limit, by itself, does not prove that intoxication was the factual cause of the accident. *Kovalchick Salvage Co., supra.*

¶ 37 We also disagree with the basic premise of Kerr's argument, that if the accident was caused by Klinger's intoxicated state, then he is outside the course and scope of his employment. Kerr appears to be conflating two separate provisions of the Act: Section 411, which defines an injury arising in the course of employment, and Section 431, which provides that no compensation shall be paid when the injury or death is caused by the employee's violation of law or where the injury or death would not have occurred but for the employee's intoxication. Section 431 does not state that under such circumstances an employee is "outside the scope of employment," only that no benefits are to be paid. Thusly, even if Kerr were able to prove that the accident would not have occurred but for Klinger's intoxication, it would not necessarily take Klinger outside the course and scope of his employment.[11]

¶ 38 In *Sherman v. W.C.A.B. (National Advance Systems Corp.),* 106 Pa.Cmwlth. 57, 525 A.2d 474 (1987), *appeal denied,* 517 Pa. 627, 538 A.2d 879 (1988), the Commonwealth Court, our sister court which has exclusive jurisdiction over appeals from decisions of the Workers' Compensation Appeal Board, treated these as entirely separate and distinct inquiries. Sherman died when his sports car, operating at a high rate of speed, collided with a bridge abutment. *Id.* at 474. Immediately prior to the accident, Sherman was at a retirement party for an employee of a client. *Id.* at 474–475. A toxicologist testified before the referee that Sherman's BAC of .14% rendered him significantly impaired for purposes of operating an automobile safely, and that, in his expert opinion, the accident was directly related to Sherman's consumption of alcohol. *Id.* at 475. Unlike the instant case, the employer in *Sherman* also presented the testimony of witnesses who observed Sherman's operation of the vehicle immediately prior to the accident. *Id.*

¶ 39 The referee concluded that Sherman's intoxication caused the fatal auto accident; and further, that Sherman was not in the course of his employment at the time of the fatal accident. *Id.* Claimant, Sherman's wife, appealed, and the Commonwealth Court affirmed the Board's decision, finding that recovery was barred by Section 431 of the Act. *Id.* The court distinguished *Oakes* on its facts, concluding that there was substantial evidence in the record to support the referee's critical finding that Sherman's violation of the law caused his death. *Id.*

¶ 40 The *Sherman* court then stated that since recovery was barred under Section

---

11. *See* trial court opinion, 5/30/07 at 8 ¶ 19 ("This Court concludes that violations of company policy (eating and consuming alcohol), and, violations of the law (driving after consumption of alcohol) and, course and scope of employment, are not functionally equivalent. These require separate and distinct analysis on a case-by-case basis.").

431, it need not address the claimant's contention that Sherman was in the course of his employment at the time of the accident. *Id.* Clearly, then, the court saw these as separate questions: 1) whether Sherman's intoxication caused the accident, as to preclude payment of workers' compensation benefits under Section 431 of the Act, and 2) whether Sherman was in the course and scope of his employment at the time of the accident.

¶ 41 For the foregoing reasons, we hold: 1) that the trial court did not err in finding that Klinger was in the course and scope of his employment within the meaning of the Workers' Compensation Act; 2) that collateral estoppel did not apply to bar Klinger from asserting he was within the course and scope of his employment at the time of the accident, where a Montgomery County judge held otherwise in a declaratory judgment action brought by Boiler Erection's insurer; 3) the record supports the trial court's conclusion that Kerr failed to prove, by more than a preponderance of the evidence, that Klinger's intoxication was the cause in fact of the accident, and that even if such were proved, it would operate only to preclude recovery of workers' compensation benefits, and would not necessarily take Klinger outside the course and scope of his employment. Therefore, we will affirm the trial court's decision granting Klinger's motion *in limine*. Kerr's sole remedy for the injuries he sustained is workers' compensation benefits under the Act, and the exclusivity provision of the Act immunizes Klinger from liability. Because we affirm the decision of the Philadelphia trial court, the July 28, 2005 order of the Montgomery County trial court, effectively declaring that coverage exists under the policy, will be reversed. Our decision affirming Judge Massiah–Jackson's conclusion that Klinger was acting within the course and scope of his employment at the time of the accident

disposes of the coverage issue, since the policy excludes coverage where coverage is available from the insured's workers' compensation carrier. Boiler Erection's motion to quash the appeal at No. 2328 EDA 2005 will be dismissed.

¶ 42 At No. 1582 EDA 2007, Kerr, appellant, the order of May 30, 2007 is affirmed. At No. 2328 EDA 2005, EMC, appellant, the order of July 28, 2005 is reversed. Boiler Erection's motion to quash is dismissed. Jurisdiction relinquished.